EMILY A. GARDNER    6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorney for Plaintiffs

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2007 JUN 22 PM 2:25

R. HIGA
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands <br><br> Plaintiffs, <br><br> v. <br><br> MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unicorporated Canadian business; Doe Entities and Individuals 1- 100, <br><br> Defendants. | Civil No. 07-1-0848-05 SSM (Non-Vehicle Tort) <br><br> FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND FOR ECONOMIC AND NON-ECONOMIC DAMAGES; EXHIBITS "1"- "3"; FIRST AMENDED DEMAND FOR JURY TRIAL; FIRST AMENDED SUMMONS TO ANSWER CIVIL COMPLAINT |

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND FOR ECONOMIC AND NON-ECONOMIC DAMAGES

Plaintiffs Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris

Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands

("Plaintiffs") individually, through their attorney, Emily A. Gardner, Attorney at Law, file this

complaint against Defendants Menu Foods, Inc., a New Jersey Corporation, Menu Foods

Holdings, Inc. a Delaware Corporation,  and Menu Foods Income Fund, an unicorporated

Canadian business (collectively "Menu Foods"), and  allege, based upon the best of Plaintiffs'

knowledge, information and belief, as follows:

I.    **INTRODUCTION**

1.    In this case, Menu Foods produced, manufactured, marketed and/or sold

adulterated dog and cat food that contained aminopterin, a type of rat poison and melamine, an

industrial chemical used in manufacturing plastics and in fertilizer in countries outside the United

States.  The food contaminants have been shown to cause serious injury, illness and/or death to

dogs and cats.  A current listing of the recalled dog and cat food products ("Recalled Products")

manufactured by Defendants is contained on Exhibit "1" attached to the complaint.

2.    Menu Foods has admitted that its products were adulterated and has

initiated a voluntary recall of its dog and cat food products manufactured from November 8, 2006

through March 6, 2007. (See Exhibit "2," Statement of Paul Henderson, President and Chief

Executive Officer of Menu Foods before the U.S. House of Representatives Committee on

Energy and Commerce Subcommittee on Oversight and Investigations, at

http://menufoods.com/recall/PR%20Introductory%Remarks%2004242007.htm, attached hereto).

3.    This action seeks the following relief for Plaintiffs, several Hawai'i pet

owners who purchased Menu Foods' adulterated food for their dogs and cats, fed it to their dogs

and cats, with the direct result that their dogs and cats became seriously ill and/or died in Hawaii:

a)    Declaratory relief that Menu Foods sold adulterated pet food in violation

of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which prohibits the manufacture,

EXHIBIT  A

sale, delivery, holding, or offering for sale of any food that is adulterated  because it contains a poisonous or deleterious substance which may render it injurious to health.  Under HRS 328-1, "Food" is expressly defined as "articles used for food or drink by humans, dogs or cats." (Emphasis added).

　　　　b)　　Actual damages (including all general, special, incidental and consequential damages) for the costs associated with purchasing the adulterated and contaminated food, for any and all out of pocket expenses associated with purchasing replacement foods, for obtaining necessary veterinary care and treatment; paying for medicines and/or veterinary supplies; for costs associated with post-mortem examinations and/or necropsies;  for costs associated with cremation and/or burial of remains; for wage loss incurred as a result of having to provide care for a sick dog or cat;  and/or for costs associated with the rendering of psychiatric services to surviving owners, and punitive damages, as permissible by law.

　　　　c)　　Other economic and non-economic damages incurred by Plaintiffs including but not limited to damages representing the intrinsic, special or unique value of Plaintiffs' deceased pet dogs or cats; damages relating to loss of use of Plaintiffs' pet dogs or cats; damages relating to severe emotional distress, interference with Plaintiffs' lives and the quiet enjoyment of their realty and personalty; all subject to proof and modification at trial.

**II.**　　　**Factual Background**

　　　　4.　　In March 2007 Menu Foods recalled 53 brands of cuts and gravy style wet dog food and 42 brands of cuts and gravy style wet cat food which had caused dogs and cats to

EXHIBIT A

become ill. One common symptom in the sick dogs and cats was kidney failure, known as acute renal failure. The dog and cat foods was ultimately found to have been contaminated with aminopterin (rat poison) and melamine, an industrial chemical used in fertilizers and manufacturing plastics banned for use in the United States.

### Menu Foods Claims About the Quality of its Pet Food

5.      Menu Foods is the largest maker of wet dog and cat food in North America, with its products sold under 95 brand names, which the company identifies as supermarkets, big box and pet product retailers and wholesalers. Menu Foods manufactures pet food for 17 of the top 20 North American retailers and is also a contract manufacturer of branded pet food products, manufacturing for five of the top six branded companies in North America. It is the only manufacturer in North America offering wet food in pouch format. Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

6.      In conjunction with the sale of its products, Menu Foods marketed, advertised and warranted that its pet food was fit for the ordinary purpose for which it was sold – consumption by dogs and cats– and that its products were safe and free from defects. Menu Foods produces its pet food products intending that consumers/pet owners will purchase the pet food products, regardless of brand or label name, place of purchase or the location where pets actually consume them. Menu Foods pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiffs in Hawaii to feed to their

4

EXHIBIT  A

pet dogs and cats.

7.    Menu Foods makes numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada. Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

### Menu Foods Use of Adulterated Wheat Gluten

8.    In late 2006, Menu Foods began to use a new supplier of wheat gluten from China named Xuzhou Anying Biologic Technology Development Company Ltd. ("Xuzhou"). In wet pet food, wheat gluten is added to provide a meaty texture and as a binding agent. A meaty texture is an important characteristic of wet pet foods.

9.    Despite the fact that Menu Foods was purchasing a *major ingredient* used in many of the foods it manufactures from a new supplier, Menu Foods did not test or otherwise determine whether or not the wheat gluten it was purchasing was safe for its intended purpose—consumption by dogs and cats. As North America's leading manufacturer of wet dog and cat foods—for more than 95 different brands—Menu Foods merely went on the assumption that the new wheat gluten, purchased from a foreign provider, would perform safely and as intended.

10.    In May, 2007, reports surfaced indicating that the wheat gluten Menu Foods purchased from Xuzhou, was actually flour "spiked" with melamine, to increase the apparent protein content.

EXHIBIT A

## Menu Foods Discovery of Adulterated Pet Food & Voluntary Recall

11.    In late 2006 through the early part of 2007, Menu Foods began to receive complaints from veterinarians and consumers who had been feeding their dogs and cats Menu Foods products, that the products were thought to be making dogs and cats severely ill and/or die. The FDA also reported receiving thousands of consumer complaints about Menu Foods pet products from veterinarians and people having dogs and/or cats that consumed the tainted food. On information and belief, Menu Foods may have first learned that its pet food was causing health problems to the dogs and cats that ate it in December of 2006. However, Menu Foods had actual knowledge of the contamination at least by February 20, 2007.

12.    On or about February 27, 2007, Menu Foods began testing its products on between 40 to 50 dogs and cats. Between 7 and 10 of those dogs and cats died during the test period.

13.    On or about March 6, 2007, Menu Foods switched to a different supplier of wheat gluten and continued to manufacture its products.

14.    On or about March 16, 2007-- almost one month after confirming that its products were causing illness and death in dogs and cats, and ten days after it secured a new supplier for wheat gluten so that it could continue to manufacture its products--Menu Foods initiated a recall of 51 brands of "cuts and gravy" style dog food and 40 brands of "cuts and gravy" style cat food, all produced at Menu Foods' U.S. facilities between Dec. 3, 2006, and

EXHIBIT A

March 6, 2007. The original recall involved 91 different products and 60 million cans and pouches of cat and dog food.

15.    On March 23, 2007 New York State health officials reported that laboratory tests of the recalled Menu Foods products revealed the presence of aminopterin (rat poison) at levels of at least 40 parts per million. The pet food samples were tested by the New York State Animal Health Diagnostic Center at Cornell University and New York State Food Laboratory, which identified aminopterin as a contaminant. See, Exhibit "3" (http://www.agmkt.state.ny.us/AD/release.asp?ReleaseID=1598).

16.    On March 30, 2006, reports indicated that melamine, an industrial chemical used in manufacturing plastics and fertilizer was also present in Menu Foods products. More recently, melamine has become the focus of the investigation. See Exhibit "3" (http://www.fda.gov/cvm/MenuFoodRecallFAQ.htm.).

17.    On March 30, 2007, Menu Foods asserted that the pet food manufactured in its Emporia, Kansas and Pennsauken, New Jersey facilities *after* March 6, 2006 was "safe and healthy" because it contains no melamine, no wheat gluten from Xuzhou, and that "those products not associated with the suspect wheat gluten performed very well and in a manner consistent with historic norms."

18.    The Menu Foods product recall list has been amended several times since March 16, 2006 to include additional brands and expanded to include products manufactured back to November 8, 2006. The most recent expansion occurred on or about May 2, 2007 and was implemented to address cross-contamination in products manufactured during the same time

EXHIBIT A

the products containing the toxic wheat gluten were manufactured. Menu Foods current recall list includes <u>220</u> different products.

19. After announcing the recall, Menu Foods requested that consumers return all unused recalled product, or otherwise discard it. In many cases, this led to spoliation of evidence that may prove helpful to Plaintiffs' cases.

20. After announcing its original recall, Menu Foods expanded the recall several times by duration and by number of products affected. By effectuating the recall in such a way (e.g., in an expansive, as opposed to in a narrowing manner) Menu Foods put concerns regarding its profits over concerns regarding pet health. The gradated manner in which Menu Foods effectuated its recall also led to a great deal of confusion and misunderstanding among consumers.

21.    Menu Foods has admitted that certain of its pet food products produced between November 8, 2006 and March 6, 2007 contained contaminants and that its products were contaminated and adulterated, defective and potentially causing injury and death to dogs and cats (not fit for their intended purpose). See generally, Exhibit "1".

**FDA and State Regulatory Confirmation of Contamination and Adulteration**

22.    The FDA reported that as many as one in six dogs and cats died in tests conducted by Menu Foods on its pet food products in February 2007 after Menu Foods received reports that its pet food was poisoning and killing pets. The FDA also has reported receiving thousands of consumer complaints about Menu Foods pet products from veterinarians and people

8

EXHIBIT A

having dogs and/or cats that consumed the tainted food. See generally Exhibit "3":

http://www.fda.gov/cvm/petfoods.htm.

      23.      The FDA has concluded that "the association between melamine in the

kidneys and urine of cats that died and melamine in the food they consumed is undeniable.

Additionally, melamine is an ingredient that should not be found in pet food at any level. Exhibit

"3" http://www.fda.gov/cvm/MenuFoodRecallFAQ.htm.

      24.      The ACVIM (American College of Veterinary Internal Medicine) has

"recommended that pets (dogs and cats) that ingested pet food that was on the recall list, whether

showing signs of illness (lethargy, vomiting, diarrhea, anorexia, etc.) or not (asymptomatic)

should be seen by their veterinarian for baseline blood chemistries and urinalysis in order to

ascertain the status of their renal (kidney) function. (The ACVIM is the Official Organization of

the Veterinary Specialties of Small Animal Internal Medicine, Large Animal Internal Medicine,

Cardiology, Neurology, and Oncology) http://www.acvim.org/)." (emphasis added).

### Hawai'i Food, Drug and Cosmetic Act – HRS Chapter 328

      25.      Under the Hawai'i Food, Drug and Cosmetic Act "food" is defined as

"articles used for food or drink by humans, dogs or cats."  HRS § 328-1.

      26.      HRS Chapter 328 applies to Defendants because they are engaged in the

"selling of food… includ[ing] the manufacture, production, processing, packing, exposure, offer,

possession, and holding of any such article for sale…" HRS § 328-5.

EXHIBIT A

27.     Under "HRS §328-6, Prohibited acts, the following acts and the causing thereof within the State by any person are prohibited: (1) The manufacture, sale, delivery, holding, or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded..."

28.     Under Hawai'i Administrative Rules §11-29-3(b) "[d]og and cat food...shall mean a food that is wholesome and nutritious for dogs and cats...."

29.     Under HRS § 328-9(1), " A food shall be deemed to be adulterated... (A) If it bears or contains any poisonous or deleterious substance which may render it injurious to health...[or]...(C)  If it ....is otherwise unfit for food..."

30.     Defendant sold pet food products that -- by Defendants' own admissions and the findings of federal and state agencies-- were adulterated within the meaning of HRS Chapter 328,  that contained poisonous or deleterious substances which may render them injurious to health and/or that were otherwise unfit for food.

31.     Defendants' recall of its pet food products confirm that its products were unfit for food.

32.     Plaintiffs, as described in detail below, are all persons who:  1) purchased dog and/or cat food products manufactured by Menu Foods and included on the company's recall list; 2) fed it to their dogs or cats during the period between November 8, 2006 and the date the recall was announced, March 16, 2007, and 3) suffered economic and non-economic damages due to the fact that their pet dog(s) or cat(s) became ill and/or died.

EXHIBIT __A__

## II. PARTIES AND JURISDICTION

33.    Plaintiff Valerie Sylvester is and was at all times relevant hereto a resident of the City and County of Honolulu, who purchased Iams Chicken with Chunks in Gravy canned dog food at Walmart in Honolulu, in early March 2007, and fed it to her beagle named Twinkles. Twinkles subsequently died.

34.    Plaintiff David Pang is and was at all times relevant hereto a resident of the City and County of Honolulu, who purchased Ol'Roy Hearty Cuts in Gravy canned dog food at Walmart in Honolulu, from December through January 2006, and fed it to his Staffordshire terrier named Kuma. Kuma subsequently died.

35.    Plaintiff Andrew Garcia is and was at all times relevant hereto a resident of the City and County of Honolulu, who purchased Ol'Roy Hearty Cuts in Gravy canned dog food from Walmart in Honolulu from December 2006 through February 2007, and fed it to his mixed-breed dog named Braddah. Braddah subsequently died.

36.    Plaintiff Ruth Camargo is and was at all times relevant hereto a resident of Maui County, who purchased Ol'Roy Hearty Cuts in Gravy pouched dog food from Walmart on Maui through the recall period and fed it to her Shih Tsu named Gilby. Gilby subsequently died.

37.    Plaintiff Chris Hubbard is and was at all times relevant hereto a resident of the City and County of Honolulu who purchased Special Kitty Filet Mignon cat food in pouches from Walmart in Honolulu from October 2006 through March 2007 and fed it to his domestic short-haired cat named Boots. Boots subsequently died.

EXHIBIT A

38.    Plaintiff Stacey Collins is and was at all times relevant hereto a resident of Kauai County who purchased Nutro Natural Choice Chicken and Brown Rice dog food in pouches from PetCo from November 2006 through March 2007 and fed it to her French bulldog named Elvis. Elvis subsequently became gravely ill in February 2006 and continues to receive veterinary treatment and follow-up.

39.    Plaintiff Randall Bandmann is and was at all times relevant hereto a resident of the County of Kauai, who purchased Ol'Roy canned Hearty Slices in Gravy dog food from Walmart in Lihue, Kauai, in December 2006 and fed it to his Shih Tsu named Keawe. Keawe subsequently became ill.

40.    Plaintiff Kelly Engle is and was at all times relevant hereto a resident of the City and County of Honolulu who purchased Special Kitty Select Gourmet Cat Food (Chicken and Mixed Grill) from Walmart in Honolulu from November 2006 through February 2007 and fed it to her domestic short-haired cat named Bubba. Bubba subsequently became gravely ill and continues to receive veterinary care.

41.    Plaintiff Pam Gould is and was at all time relevant hereto a resident of Maui County who purchased Priority One recalled pet food from Safeway in Kahului, Maui in February through March 2007 and fed it to her domestic short-haired cat named Velcro. Velcro subsequently became gravely ill and continues to receive veterinary care.

42.    Plainitff Erik Coral-Sands is and was at all times relevant hereto a resident of Maui County who purchased Ol'Roy dog food (Lamb and Rice and Beef Heatry Slices in Gravy) from Walmart in Maui for several years, through March 2007 and fed it to his Labrador

12

EXHIBIT A

retriever mixed breed dog named Brown Dog.  Brown Dog subsequently became severely ill and died.

43.    Defendant Menu Foods, Inc. is a New Jersey Corporation with its principal place of business at 9130 Griffith Morgan Lane, Pennsauken, New Jersey  08110.

44.    Defendant Menu Foods Income Fund is an unincorporated company established under Ontario, Canada law pursuant to a declaration of trust dated May 22, 2002. Menu Foods Operating Trust maintains its headquarters at 8 Falconer Drive, Streetsville, Ontario, Canada  L5N

45.    Defendant Menu Foods Holdings, Inc. is a Delaware Corporation which owns Defendant Menu Foods, Inc.   Defendant Menu Foods Holdings, Inc. maintains the Corporation Trust as its registered agent for service of process at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware  19801.

46.    On information and belief, Defendants Menu Foods Inc., Menu Foods Income Fund and Menu Foods Holdings, Inc. operate in the United States and Canada through a series of interlocking companies including but not limited to Menu Foods Midwest Corporation, Menu Foods Trust, Menu Foods Operating Trust, Menu Foods Limited Partnership, Menu Foods Acquisitions, Inc., Menu Foods Limited, all of which are Canadian business entities located at 8 Falconer Drive, Streetsville, Ontario, Canada.

47.    At all time relevant Defendants Menu Foods Inc. Menu Foods Income Fund and Menu Foods Holdings, Inc., Menu Foods Midwest Corporation, Menu Foods Trust, Menu Foods Operating Trust, Menu Foods Limited Partnership, Menu Foods Acquisitions, Inc.

13

EXHIBIT  A

and Menu Foods Limited are affiliates and/or subsidiaries and/or alter egos, such that the actions of one are attributable to each other entity.

48.    At all times relevant, Menu Foods was responsible for the actions or inactions of its suppliers, including the suppliers of tainted pet food ingredients (e.g., plant proteins, such as wheat gluten) that is the subject of this lawsuit.

49.    At all times relevant, Menu Foods has transacted business in the state of Hawaii through its distribution and sale of food products. Menu Food products are subject to the requirements of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which applies to all foods for dogs and cats sold in the state of Hawai'i.

50.    DOE Entities and Individuals 1-100 are sued herein under fictitious names because their true names and capacities, whether individual, corporate, associate, or otherwise are unknown to Plaintiff. These defendants might be liable for the acts complained of herein, directly or vicariously. When the true names and capacities are ascertained, Plaintiff asks leave to amend this Complaint to state the true names.

51.    Through investigation and research, Plaintiffs have diligently and in good faith attempted to ascertain the names and identities of the possible Doe Entities and Individuals, but those identities remain unknown to Plaintiff. Further efforts to identify these defendants will be made during discovery in this case.

52.    Jurisdiction is proper as all Plaintiffs reside in the State of Hawaii and have claims arising under Hawaii law. All Plaintiffs' claims arose in the State of Hawaii, and the amount in controversy for each individual Plaintiff is believed to be less than $75,000.

14

EXHIBIT A

## COUNT I
### (DECLARATORY RELIEF)

53.     Plaintiffs reallege and incorporate all the above allegations.

54.     The conduct of Menu Foods as alleged herein violates Hawai'i Revised Statutes Chapter 328, the Hawai'i Food, Drug and Cosmetic Act.  Pursuant to the Hawaii Declaratory Judgment Act, Plaintiffs are entitled to a declaration that Menu Foods sold adulterated pet food in violation of the Hawai'i Food, Drug & Cosmetic Act, HRS Chapter 328, which prohibits the manufacture, sale, delivery, holding, or offering for sale of any food, drug, device, or cosmetic that is adulterated because it contains a poisonous or deleterious substance which may render it injurious to health.

## COUNT II
### (STRICT PRODUCTS LIABILITY)

55.     Plaintiffs reallege and incorporate all the above allegations.

56.     Defendants are strictly liable for supplying a product that was either: 1) defective in its manufacture by virtue of the introduction of toxic contaminants, including but not limited to aminopterin and melamine, into the product while under Defendants' control, such that it failed to meet Plaintiffs' reasonable expectations as to its safety, or, 2) defective in its design by virtue of the lack of testing and/or safeguards necessary to ensure that toxic contaminants, such as aminopterin and melamine, were not introduced into its pet food while under Defendants' control, such that it failed to meet Plaintiffs' reasonable expectations as to its safety.

15

EXHIBIT A

57.     Defendants are also strictly liable for their failure to warn the public of the known dangers and reasonably foreseeable harms that could result from the use of their pet food products.

58.     Plaintiffs, as owners of dogs and/or cats, are ordinary and reasonably foreseeable users of Defendants' pet food products, and purchased the products in a foreseeable manner and for their intended purpose, in that they fed it to their pet dogs and/or cats.  Plaintiffs have been damaged, and have suffered losses including the loss of a pet, the expenditure of money for veterinary care and continued veterinary monitoring of pets, the expenditure of money associated with final expenses for their pets including cremation, burial and necropsy; severe emotional distress, the expenditure of receiving psychological or psychiatric care; and the money spent on the product itself.

### COUNT III
### (BREACH OF WARRANTY)

59.     Plaintiffs reallege and incorporate all the above allegations.

60.     Defendants, by calling their product "food" and making other similarly enticing representations as set forth more fully above, impliedly and/or expressly warranted that its products were ingestible and would not sicken and/or kill the dogs and cats that ate them. Menu Foods also warranted thereby that their products were merchantable and fit for their intended purpose of nourishing dogs or cats without sickening them and/or killing them.

61.     Defendants products, as described more fully in the body of the Complaint, were in fact, unmerchantable and unfit for their intended purpose of nourishing dogs and cats without sickening them and/or killing them.  Defendants therefore breached express

16

EXHIBIT  A

and/or implied warranties of merchantability. Plaintiffs were damaged thereby, including loss of a pet, the expenditure money for veterinary care and continued veterinary monitoring of pets, the expenditure of money associated with final expenses for their pets including cremation, burial and necropsy; severe emotional distress, the expenditure of receiving psychological or psychiatric care; and the money spent on the product itself.

## COUNT IV
### (NEGLIGENCE)

62.    Plaintiffs reallege and incorporate all the above allegations.

63.    Defendants, as North America's leading manufacturer of wet dog and cat foods—for more than 95 different brands--owed a duty to Plaintiffs, as reasonably forseeable consumers of its products that its pet foods were not poisonous and/or unsafe to dogs and cats.

64.    Despite the fact that Defendants were purchasing a major ingredient used in many of the foods it manufactures (e.g. wheat gluten) from a new, foreign, supplier, Defendants did not test or otherwise determine whether or not the wheat gluten it was purchasing was safe for its intended purpose—consumption by dogs and cats—prior to incorporating it into the more than 95 different products it manufactures. In so doing, Defendants breached their duty of care owed to Plaintiffs by failing to use sufficient quality control or perform adequate testing or manufacturing practices.

65.    Defendants further breached their duty of care owed to Plaintiffs by failing to even confirm that the ingredient it purchased from a new, foreign supplier, was in fact, wheat gluten.

17

EXHIBIT  A

66.    Defendants further breached their duty of care owed to Plaintiffs by failing to take sufficient measures—particularly when Defendants knew or should have known their products were unsafe after receiving numerous complaints from veterinarians and consumers—to prevent their products from being offered for sale, sold or fed to pet dogs and cats.

67.    Defendants' actions and omissions as alleged herein relating to the sale, delivery and offering for sale of adulterated food products were done in violation of HRS § 328-6, and therefore constitute evidence of negligence.

68.    Defendants' aforementioned breaches of duty were the actual and proximate cause of damage and injury to Plaintiffs, including loss of a pet, the expenditure money for veterinary care and continued veterinary monitoring of pets, the expenditure of money associated with final expenses for their pets including cremation, burial and necropsy; severe emotional distress, the expenditure of receiving psychological or psychiatric care; and the money spent on the product itself.

69.    Defendants' conduct, as alleged herein, constitutes gross negligence as it was willful, wanton and reckless and done in conscious disregard for the safety and rights Plaintiffs.  Plaintiffs are entitled to an award of punitive damages.

## COUNT V
### (NON-DISCLOSURE)

70.    Plaintiffs reallege and incorporate all the above allegations.

18

EXHIBIT A

71.    As North America's leading manufacturer of wet dog and cat foods, Defendants owed Plaintiffs a duty to exercise reasonable care in disclosing information about the safety of its dog and cat food products.

72.    Defendants' conduct, as alleged herein, constitutes non-disclosure.

73.    As a proximate cause Defendants' non-disclosure, Plaintiffs suffered injuries and damages including loss of a pet, the expenditure money for veterinary care and continued veterinary monitoring of pets, the expenditure of money associated with final expenses for their pets including cremation, burial and necropsy; severe emotional distress, the expenditure of receiving psychological or psychiatric care; and the money spent on the product itself.

### COUNT VI
(UNFAIR AND DECEPTIVE TRADE PRACTICES)

74.    Plaintiffs reallege and incorporate all the above allegations.

75.    Defendants' conduct, as alleged herein constitutes an unfair or deceptive act or practice prohibited by HRS Chapter 480, and Plaintiffs have suffered injuries and damages thereby, including loss of a pet, the expenditure money for veterinary care and continued veterinary monitoring of pets, the expenditure of money associated with final expenses for their pets including cremation, burial and necropsy; severe emotional distress, the expenditure of receiving psychological or psychiatric care; and the money spent on the product itself.

### COUNT VII
(UNJUST ENRICHMENT)

76.    Plaintiffs reallege and incorporate all the above allegations.

19

EXHIBIT   A

77.    As a direct, proximate and foreseeable result of Defendants' acts, omissions and otherwise wrongful conduct, Plaintiffs have suffered damages.  Defendants profited and benefited from the sale of their Products, even as the Products caused Plaintiffs to suffer damages and injury.

78.    Defendants have accepted and retained these profits and benefits derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, such as Plaintiffs, were not receiving products of the quality, nature, fitness or value as had been represented by Defendants or that reasonable consumers would expect.  Plaintiffs purchased Defendants' pet food products, expecting that they would be safe to feed and nourish their pet dogs and cats, and instead have had to endure the death and/or illness of their pets.

79.    By virtue of the acts, omissions and other wrongful conduct alleged herein, Defendants have been unjustly enriched at Plaintiffs' expense.  Plaintiffs are entitled to and seek the disgorgement and restitution of Defendants wrongful profits, revenues, and benefits, to the extent and in the amounts deemed appropriate by the Court.  Plaintiffs are also entitled to and seek other such relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    Appropriate declaratory relief;

B.    As to Counts II, III, IV and V, that general, special, incidental and

EXHIBIT __A__

consequential damages be awarded each Plaintiff in amounts to be shown at trial, as well as other economic and non-economic damages, and punitive damages, where appropriate.

      C.    As to Count VI, that general, special, incidental and consequential damages be awarded each Plaintiff in amounts shown at trial, as well as treble damages pursuant to HRS § 480-13.

      D.    As to Count VII that Plaintiffs be awarded actual damages, restitution and/or disgorgement from Defendants of the benefits conferred by Plaintiffs.

      E.    That the Court award costs of suit, pre-judgment and post-judgment interest, and attorneys' fees pursuant to HRS Chapter 480 or as otherwise allowed by law; and such other relief as this Court deems just and proper, including the $5,000 alternative minimum damages awardable to any Plaintiff who is an elder pursuant to the provisions of HRS Chapter 480; and

      F.    That the Court provide any and all equitable relief that it deems just and proper.

Dated: Honolulu, Hawaii   June 22, 2007

_____
EMILY A. GARDNER
Attorneys for Plaintiffs

21

EXHIBIT A



# MENU FOODS INCOME FUND



Home
Recall Information
  Press Release
  Cat Product Information
  Dog Product
  Information
  FAQ's for Consumers

Recalled Dog Product Information

Recall Information **1-866-895-2708**

Menu Foods Income Fund
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

### Variety or Multi-Packs:

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1.  Americas Choice, Preferred Pets  Last Updated: May 2, 2007
2.  Authority  Last Updated: May 2, 2007
3.  Award  Last Updated: May 2, 2007
4.  Best Choice  Last Updated: May 2, 2007
5.  Big Bet  Last Updated: May 2, 2007
6.  Big Red  Last Updated: May 2, 2007
7.  Bloom  Last Updated: May 2, 2007
8.  Cadillac  Last Updated: May 2, 2007
9.  Companion  Last Updated: May 2, 2007
10. Compliments  Last Updated: May 2, 2007
11. Co-Op Gold  Last Updated: May 2, 2007
12. Demoulas Market Basket  Last Updated: May 2, 2007
13. Eukanuba  Last Updated: April 5, 2007
14. Food Lion  Last Updated: May 2, 2007
15. Giant Companion  Last Updated: May 2, 2007
16. Grreat Choice  Last Updated: May 2, 2007
17. Hannaford  Last Updated: May 2, 2007
18. Health Diet Gourmet Cuisine  Last Updated: May 2, 2007
19. Hill Country Fare  Last Updated: May 2, 2007
20. Hy-Vee  Last Updated: May 2, 2007
21. Iams  Last Updated: April 5, 2007
22. La Griffe  Last Updated: May 2, 2007
23. Laura Lynn  Last Updated: May 2, 2007
24. Loving Meals  Last Updated: May 2, 2007
25. Master Choice  Last Updated: May 2, 2007
26. Meijers Main Choice  Last Updated: May 2, 2007
27. Mighty Dog Pouch
28. Mixables  Last Updated: May 2, 2007
29. Natural Life  Last Updated: May 3, 2007
30. Nu Pet  Last Updated: May 2, 2007
31. Nutriplan  Last Updated: May 2, 2007
32. Nutro Max  Last Updated: May 2, 2007
33. Nutro Natural Choice  Last Updated: May 2, 2007
34. Nutro Ultra  Last Updated: May 2, 2007
35. Nutro  Last Updated: May 2, 2007
36. Ol'Roy Canada  Last Updated: May 2, 2007
37. Ol'Roy US  Last Updated: May 2, 2007
38. Paws  Last Updated: May 2, 2007
39. Performatrin Ultra  Last Updated: May 3, 2007
40. Pet Essentials  Last Updated: May 2, 2007
41. Pet Pride - Good n Meaty  Last Updated: May 2, 2007

EXHIBIT___A

Menu Foods Income Fund – Annual General Meeting

42. Presidents Choice  Last Updated: May 2, 2007
43. Price Chopper Last Updated: May 2, 2007
44. Priority Canada  Last Updated: May 2, 2007
45. Priority US  Last Updated: May 2, 2007
46. Publix  Last Updated: May 2, 2007
47. Roche Brothers  Last Updated: May 2, 2007
48. Save-A-Lot Choice Morsels  Last Updated: May 2, 2007
49. Schnucks  Last Updated: May 2, 2007
50. Shep Dog  Last Updated: May 2, 2007
51. Springsfield Prize  Last Updated: May 2, 2007
52. Sprout  Last Updated: May 2, 2007
53. Stater Brothers  Last Updated: May 2, 2007
54. Stop & Shop Companion  Last Updated: May 2, 2007
55. Tops Companion  Last Updated: May 2, 2007
56. Triumph  Last Updated: May 2, 2007
57. Truly  Last Updated: May 2, 2007
58. Wegmans Bruiser  Last Updated: May 2, 2007
59. Weis Total Pet  Last Updated: May 2, 2007
60. Western Family Canada  Last Updated: May 2, 2007
61. Western Family US  Last Updated: May 2, 2007
62. White Rose  Last Updated: May 2, 2007
63. Winn Dixie  Last Updated: May 2, 2007
64. Your Pet  Last Updated: May 2, 2007

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

EXHIBIT    A

Menu Foods Income Fund - Annual General Meeting                                    Page 1 of 2



# MENU FOODS INCOME FUND

Home
**Recall Information**
Press Release
Cat Product Information
Dog Product Information
FAQ's for Consumers

### Recalled Cat Product Information
#### Recall Information 1-866-895-2708

Menu Foods Income Fund
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

### Variety or Multi-Packs:

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1. Americas Choice, Preferred Pets Last Updated: May 2, 2007
2. Authority Last Updated: May 2, 2007
3. Best Choice Last Updated: May 2, 2007
4. Cats Choice Last Updated: May 3, 2007
5. Companion Last Updated: May 2, 2007
6. Compliments Last Updated: May 2, 2007
7. Co-Op Gold Last Updated: May 2, 2007
8. Demoulas Market Basket Last Updated: May 2, 2007
9. Despar Last Updated: May 2, 2007
10. Drs Foster & Smith Last Updated: May 3, 2007
11. Eukanuba Last Updated: April 5, 2007
12. Fame Last Updated: May 2, 2007
13. Feline Classic Last Updated: May 2, 2007
14. Feline Cuisine Last Updated: May 2, 2007
15. Fine Feline Cat Last Updated: May 2, 2007
16. Food Lion Last Updated: May 2, 2007
17. Foodtown Last Updated: May 2, 2007
18. Giant Companion Last Updated: May 2, 2007
19. Giant Eagle Last Updated: May 2, 2007
20. Hannaford Last Updated: May 2, 2007
21. Hill Country Fare Last Updated: May 2, 2007
22. Hy-Vee Last Updated: May 2, 2007
23. Iams Last Updated: April 5, 2007
24. J.E. Mondou Last Updated: May 2, 2007
25. La Griffe Last Updated: May 2, 2007
26. Laura Lynn Last Updated: May 2, 2007
27. Li'l Red Last Updated: May 2, 2007
28. Loving Meals Last Updated: May 2, 2007
29. Master Choice Last Updated: May 2, 2007
30. Medi-Cal Last Updated: May 2, 2007
31. Meijer's Main Choice Last Updated: May 2, 2007
32. Natural Ultramix Last Updated: May 2, 2007
33. Nu Pet Last Updated: May 2, 2007
34. Nutriplan Last Updated: May 2, 2007
35. Nutro Last Updated: May 2, 2007
36. Nutro Max Gourmet Classics Last Updated: May 2, 2007
37. Nutro Natural Choice Last Updated: May 2, 2007
38. Nutro Products Last Updated: May 2, 2007
39. Paws Last Updated: May 2, 2007
40. Performatrin Ultra Last Updated: May 3, 2007
41. Pet Pride Last Updated: May 2, 2007

EXHIBIT  A

42. Presidents Choice  Last Updated: May 2, 2007
43. Price Chooper Last Updated: May 2, 2007
44. Priority Canada  Last Updated: May 2, 2007
45. Priority US  Last Updated: May 2, 2007
46. Publix  Last Updated: May 2, 2007
47. Roche Brothers  Last Updated: May 2, 2007
48. Roundy's  Last Updated: May 2, 2007
49. Save-A-Lot Special Blend  Last Updated: May 2, 2007
50. Schnucks  Last Updated: May 2, 2007
51. Science Diet Feline Savory Cuts Cans  Last Updated: April 12, 2007
52. Sophistacat  Last Updated: May 2, 2007
53. Special Kitty Canada  Last Updated: May 2, 2007
54. Special Kitty US  Last Updated: May 2, 2007
55. Springfield Prize  Last Updated: May 2, 2007
56. Sprout  Last Updated: May 2, 2007
57. Stop & Shop Companion  Last Updated: May 2, 2007
58. Stuzzy Gold  Last Updated: May 2, 2007
59. Tops Companion  Last Updated: May 2, 2007
60. Triumph  Last Updated: May 2, 2007
61. Wegmans  Last Updated: May 2, 2007
62. Weis Total Pet  Last Updated: May 2, 2007
63. Western Family Canada  Last Updated: May 2, 2007
64. Western Family US  Last Updated: May 2, 2007
65. White Rose  Last Updated: May 2, 2007
66. Winn Dixie  Last Updated: May 3, 2007
67. Your Pet  Last Updated: May 2, 2007

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

EXHIBIT   A

## U.S. House of Representatives
## Committee on Energy and Commerce
## Subcommittee on Oversight and Investigations

### Opening Statement of Paul K. Henderson

My name is Paul Henderson, and I am the President and Chief Executive Officer of Menu Foods. The Subcommittee invited me today to discuss issues of food security and in particular the recent terrible situation involving pet food manufactured with contaminated Chinese wheat gluten supplied by ChemNutra Inc. to several pet food manufacturers, including Menu Foods.

Let me begin by noting that I am a pet owner, and many of our employees are pet owners. My dog eats food manufactured by Menu Foods. I understand, and our employees understand, the loss felt by pet owners as a result of pet food made with contaminated ingredients. We deeply sympathize with these pet owners.

Menu Background – Quality Producer

Who is Menu Foods? Menu Foods has three manufacturing plants in the

EXHIBIT A

United States. We employ more than 800 workers here, and the majority of our assets and sales are in this country.

Menu is recognized in the pet food industry as a quality manufacturer. This might seem a little odd in light of the recent product recall, but as I sit here today, I can not think of a more accurate description of my company.

How can I say that? Well for starters, just look at our customers. Particularly the national brands for which we manufacture. They are the market leaders and quality pet food is what they are all about. Each had a choice as to who would manufacture for them, and each turned to Menu.

In reality, it wasn't that easy. For many, we first had to demonstrate an ability to manufacture at a level of quality at least as good as their own. These branded pet food companies sent their inspectors into our plants and satisfied themselves as to our abilities and our quality. Sometimes they identified a procedure that was standard within their plants, and they required us to adopt the same procedure in order to secure their

EXHIBIT A

business. By doing so, they contributed to our own improvement efforts, with the result that today we are one of the highest quality operations in the United States.

But we don't stop there. All of our facilities are routinely audited by outside experts. Many of our branded customers conduct annual audits of the Menu plants that manufacture for them. In addition, we are inspected by:

- The USDA's Animal and Plant Health Inspection Service.
- the Canadian Food Inspection Agency.
- the European Food Safety Inspection Service.
- the American Institute of Baking
- And Menu's Pennsauken plant was inspected by the FDA during 2006.

In over 35 years of business, Menu had never had a food safety-related product recall until the recent tragic events involving the contaminated wheat gluten.

What Happened

EXHIBIT A

A lot of speculation has taken place concerning Menu Foods' activities leading up to the recall. Much of that speculation has been inaccurate. We are pleased to correct that record.

A detailed time line is provided in my written remarks, so I will not repeat that here. Instead, let me summarize the situation by describing what it is and what it is not.

First, what it is not. It is not a situation caused by unclean facilities, poor manufacturing processes or similar problems. Our facilities are first-rate, our sanitation and manufacturing processes are state of the art. This is not a situation where lax inspection of Menu allowed a problem to occur. We have rigorous internal and external inspections. Inspections of our plants would not have prevented the melamine contamination of the wheat gluten.

This is also not a case of reacting improperly to the situation facing us. We took appropriate actions based on the information available at the time.

EXHIBIT  A

Let me put this situation in context. In 2006, Menu sold approximately 3.2 million containers of pet food per day. In contrast to this number, at the time we decided to initiate the recall, we had a handful of reports from consumers, three consumer reports passed along by a customer, and reports from a taste testing facility. None of these conclusively pointed to our food as the cause of the problems. At the same time, Menu had conducted tests for all industry-recognized causes of renal failure, and these tests had revealed no problems. In fact, it took the FDA, prestigious research organizations and several commercial laboratories several weeks of hard work to identify melamine in ChemNutra wheat gluten as the source of the problem.

However, in the face of the circumstantial evidence, we put the interests of pets and pet owners first, and notified the FDA and began a voluntary, precautionary recall. We also have cooperated in every way we could with the FDA's investigation and the efforts to identify the source of the problem.

Now, let's consider what this is, or at least what it appears to us to be.

EXHIBIT A

What this appears to be is a case of deliberate contamination of wheat gluten in order to pass off substandard product. Melamine was previously unreported as a contaminant in wheat gluten. Melamine is high in nitrogen, which is significant because the industry-standard test for protein content in wheat gluten is based on the quantity of nitrogen. Melamine would make the wheat gluten appear to have a higher protein content than was actually the case. For a seller who knows how industry testing methods work, this would allow them to cheat the buyers. And, if it were not for the previously unknown toxicity of melamine in cats and dogs, the scam would have worked. It appears likely that the public, Menu and other pet food manufacturers were the victims of a fraud.

Actions for the future

Menu has taken several steps to address the situation, including testing wheat gluten and other vegetable proteins for melamine, increasing our screening of new suppliers, and discontinuing all business with ChemNutra. We are also working with the Congress, the FDA, the Pet Food Institute and other interested parties in their investigations and in

EXHIBIT A

formulating additional measures to prevent similar occurrences in the future.

EXHIBIT A

New York State Department of Agriculture and Markets                    Page 1 of 2



## NEW YORK STATE

**Department of Agriculture & Markets**



The Department

Divisions

Programs

Funding Opportunities

Farm & Market Search

Licensing & Registration

Press & Publications

Fairs & Events

Contact Us

A-Z Index

Related Links

Security Notice



Department of Agriculture & Markets News

Friday, March 23, 2007
Contact: Jessica A. Chittenden
518-457-3136
jessica.chittenden@agmkt.state.ny.us

### NEW YORK LABORATORIES IDENTIFY TOXIN IN RECALLED PET FOOD

Aminopterin Confirmed in Recalled Pet Food and Implicated Tissue Samples

New York State Agriculture Commissioner Patrick Hooker and Cornell University's College of Veterinary Medicine Dean Donald F. Smith announced today that scientists at the New York State Food Laboratory identified Aminopterin as a toxin present in cat food samples from Menu Foods, the manufacturer of the many brands of dog and cat food that are currently the subject of a nationwide recall.

The Food Laboratory received the pet food samples from a toxicologist at the New York State Animal Health Diagnostic Center at Cornell University, where testing has been underway to try to identify the cause of kidney failure in dogs and cats that consumed the recalled brands of pet food. At Cornell's request, the Food Laboratory tested the samples for poisons and toxins, and identified Aminopterin in the pet food samples at a level of at least 40 parts per million.

"We are pleased that the expertise of our New York State Food Laboratory was able to contribute to identifying the agent that caused numerous illnesses and deaths in dogs and cats across the nation," the Commissioner said. "New Yorkers can be assured that we have two of the nation's leading laboratory programs in food safety and animal health working on this problem."

The Dean of the Cornell College of Veterinary Medicine Donald F. Smith concurred by saying, "The close partnership between the Animal Health Diagnostic Center at Cornell University and the Department of Agriculture and Markets was key to this finding."

Aminopterin, a derivative of folic acid, can cause cancer and birth defects in humans and can cause kidney damage in dogs and cats. Aminopterin is not permitted for use in the United States.

On March 16, 2007, Menu Foods initiated a recall of numerous varieties of dog and cat food that were manufactured at two of its plants in the United States between December 3, 2006 and March 6, 2007. The products are both manufactured and sold under private-label and are contract-manufactured for several national brands. Information on the specific brands of pet food subject to the recall can be found at http://www.menufoods.com/recall.

Since the recall, Department food inspectors have contacted all of the organizations that represent retail food and pet food stores to ensure that the stores were aware of the recall and that the recalled products had been removed from store shelves in New York State.

New York State is home to two laboratories that are part of federal emergency lab networks, created through the U.S. Department of Homeland Security after 9-11 to keep the nation's animals and food supply safe. The New York State Food Laboratory is part of the Federal Food Emergency Response Network (FERN) and as such, is capable of running a number of unique poison/toxin tests on food, including the test that identified Aminopterin. The New York State Animal Health Diagnostic Center at Cornell University is a member of the National Animal Health Laboratory Network and thus, is uniquely qualified to investigate the causes of animal health emergencies, like the sudden deaths of dogs and cats from the recently recalled pet food.

Links to Federal Recalls:

http://www.fda.gov/opacom/7alerts.html

http://www.fsis.usda.gov/Fsis_Recalls/index.asp

2007 Press Releases

EXHIBIT ___A___



# Pet Food Recall
# Frequently Asked Questions

*Updated May 8, 2007*

**Q: What is being recalled?**

The following companies have initiated voluntary recalls of their pet food products:

- On March 16, Menu Foods, Inc. recalled dog and cat foods produced at its facilities in Emporia, Kansas and Pennsauken, N.J. between December 3, 2006 and March 6, 2007. The products are sold by many different distributors under a number of different brand names. A full listing of all the recalled products can be found at http://www.menufoods.com/recall/. The affected products are moist (packaged in pouches) and canned diets. The products have been described as "cuts and gravy" style pet foods.

- On March 16, 2007 – Nestlé Purina PetCare Company announced that as a precautionary measure, it was voluntarily withdrawing its 5.3 ounce Mighty Dog® brand pouch products that were produced by Menu Foods, Inc. from December 3, 2006 through March 14, 2007. On March 30, Nestlé Purina PetCare Company voluntarily recalled all sizes and varieties of its ALPO® Prime Cuts in Gravy wet dog food with specific date codes http://www.fda.gov/oc/po/firmrecalls/purina203_07.html . Consumers can call 1-800-218-5898, Monday through Friday, 7 a.m. to 7 p.m. CDT or visit http://www.purina.com/ to receive more information.

- On March 30, Hill's Pet Nutrition, Inc., voluntarily recalled Prescription Diet m/d Feline dry food http://www.fda.gov/bbs/topics/NEWS/2007/NEW01599.html . The cat food is sold exclusively through veterinarians. Consumers can contact Hills at 1-800-445-5777 or visit http://www.hillspet.com/ for more information.

- On March 31, Del Monte Pet Products voluntarily recalled select product codes of its pet treat products sold under the Jerky Treats ®, Gravy Train ® Beef Sticks and Pounce Meaty Morsels ® brands as well as select dog snack and wet dog food products sold under private label brands http://www.fda.gov/oc/firmrecalls/delmonte03_07.html. A complete list of affected brands and products can be found at http://www.delmonte.com/petfoodrecall.html. Consumers can contact Del Monte at 1-800- 949-3799 for further information about the recall.

Please see http://www.fda.gov/oc/opacom/hottopics/petfood.html for additional information.

**Q: What is wrong with the pet foods?**

FDA laboratories have found a substance called melamine in samples of pet food and in the wheat gluten used as an ingredient in the pet food. Additionally, Cornell University scientists have found melamine in the urine and kidneys of deceased cats that were part of a taste testing study conducted for Menu Foods.

**Q: What is melamine?**

EXHIBIT    A

Melamine is a small, nitrogen-containing molecule that has a number of industrial uses, including as an industrial binding agent, flame retardant and as part of a polymer in the manufacture of cooking utensils and plates. Melamine has additionally been used as a fertilizer in some parts of the world. It is not registered for use as a fertilizer in the United States.

**Q: What is wheat gluten and how is it used in pet foods?**

Wheat gluten is a mixture of two proteins obtained when flour of wheat is washed to remove the starch. One use of wheat gluten is as a filler and binder in wet-style, cuts-and-gravy-type pet food. It provides a gelatinous consistency and is used to thicken pet food "gravy." It also has uses in human food products as a stabilizer or thickener. It is not generally associated with food contamination.

**Q: Has melamine been identified as the causative agent in the reported illnesses?**

The association between melamine in the kidneys and urine of cats that died and melamine in the food they consumed is undeniable. Additionally, melamine is an ingredient that should not be in pet food at any level. However, we are not yet fully certain that melamine is the causative agent. As in any investigation, we follow leads, use advanced forensics and try to narrow down the cause.

**Q: What research exists regarding melamine and cats and dogs?**

There is a scarcity of research in the published literature on melamine exposure in dogs and cats. We know of a 1945 published article in which dogs were administered 125 mg of melamine/kg body weight. The study reported melamine as having a diuretic effect, but no toxic effects were noted. We are not aware of any studies in the published literature involving the administration of melamine to cats.

**Q: How did melamine get into the wheat gluten?**

At this time, we do not know how the melamine got into the wheat gluten.

**Q. Where did the contaminated wheat gluten come from?**

We have traced the source to a single supplier, Xuzhou Anying Biologic Technology, of China.

**Q. What is FDA doing to prevent further importation of contaminated wheat gluten?**

FDA is requiring 100% sampling and review of import testing of all shipments of wheat gluten from China. Please see our import alert at http://www.fda.gov/ora/fiars/ora_import_ia9929.html.

**Q. Did the contaminated wheat gluten from China get into the human food supply?**

Import records, and records obtained during follow-up investigations reveal that all shipments of wheat gluten from the suspect Chinese supplier were purchased by a U.S. firm that supplies ingredients to pet food companies. At this time, we have no evidence to suggest that any of the imported Wheat Gluten from the suspect firm has entered the human food supply.

**Q. Have you traced all of the contaminated wheat gluten?**

We are still tracing the contaminated wheat gluten. If we learn that it has been used in the production of other pet foods, we will notify the public and take all appropriate steps to prevent further injury.

**Q: What is FDA doing in response to complaints of illnesses related to dry pet**

EXHIBIT   A

food?

FDA is collecting and analyzing samples of dry dog and cat food in response to calls from veterinarians and pet owners.

**Q: Are only dog and cat foods involved in the recall?**

Yes. The recall is only confined to pet food intended for dogs and cats.

**Q: What should I do if I have cat or dog food at home?**

Please check FDA's website at http://www.fda.gov/oc/opacom/hottopics/petfood.html to see if your pet food is involved in the recall. If your pet food is not listed, the pet food is not affected by the recall and you can continue to feed it to your pets; however, if your pet exhibits a sudden on-set of symptoms including loss of appetite, lethargy, vomiting, stop feeding the pet food and contact your veterinarian. If the pet food is one of those being recalled, do NOT feed it to your animals. Feed your pets another pet food that is not included in the recall.

**Q: What should I do if I have cat and/or dog food included in the recall?**

Do NOT feed the pet food to your animals. Return the pet food to the store where you purchased it and ask for a refund. Stores generally have a return and refund policy when a company has announced a recall of its products. If you cannot return the pet food immediately, store the food in a secure place where pets and children cannot get to it.

**Q: What if my pet ate one of the dog and cat foods being recalled?**

If your pet shows signs of illness (such as loss of appetite, lethargy and vomiting), you should consult with your veterinarian immediately. *"The American College of Internal Medicine (ACVIM) has recommended that pets (dogs and cats) that ingested pet food that was on the recall list, whether showing signs of illness (lethargy, vomiting, diarrhea, anorexia, etc.) or not (asymptomatic) should be seen by their veterinarian for baseline blood chemistries and urinalysis in order to ascertain the status of their renal (kidney) function. (The ACVIM is the Official Organization of the Veterinary Specialties of Small Animal Internal Medicine, Large Animal Internal Medicine, Cardiology, Neurology, and Oncology. http://www.acvim.org/)."*

If your pet is diagnosed with renal failure, we suggest you hold onto the food if the brand and lot numbers match the recall.

**Q: If my dog or cat ate some of the recalled food, how soon after would I see any symptoms?**

It's difficult to say for sure, but usually within a couple of days. The important thing is to monitor your pet closely for signs of lethargy, loss of appetite and vomiting. If your pet shows any of these signs, please consult your veterinarian.

**Q. In light of the recall, what should I feed my pets?**

FDA encourages pet owners to consult with their veterinarian about their pet's health and nutrition requirements. Please refer to the FDA website http://www.fda.gov/oc/opacom/hottopics/petfood.html for a list of recalled products that should not be fed to cats or dogs. Using products from companies that are not on the recall list will enable you to continue to provide safe, wholesome nutrition for your pets.

**Q: What if I took my dog or cat to the vet as a result of the recall and I want to be reimbursed for my vet bills?**

The FDA recognizes that there may be financial costs associated with any veterinarian visit; however, reimbursement for veterinary care does not fall under FDA's regulatory

EXHIBIT  A

authority.

**Q: What is FDA doing about the recall?**

- FDA has dedicated each of its 20 district offices to this investigation and approximately 400 + employees are involved in sample pet food collection, monitoring of recall effectiveness, and preparing consumer complaint reports.

- At least 3 field laboratories are directly involved in active sample analyses and each field laboratory is highly capable and standing by to conduct additional analyses as needed.

- FDA's Veterinarians and Toxicologists from the Center for Veterinary Medicine and elsewhere in the agency have been researching potential causative agents, analyzing possibilities, evaluating scientific and analytical information, and guiding and supporting the overall efforts.

- FDA is working with its regulatory partners in all 50 state agriculture and health agencies to inform them of the status of the investigative and analytical efforts.

- FDA's Emergency Operations Center remains activated and is managing the incoming information from pet owners and veterinarians and others, and is making sure the information gets to our scientists and inspection teams.

**Q: What if I want to report an adverse action about a pet food?**

Consumers and veterinarians who wish to report adverse reactions or other problems can go to the FDA internet page at http://www.fda.gov/opacom/backgrounders/complain.html to obtain contact information for the FDA complaint coordinator in their state. When reporting an adverse event or complaint, please try to have the following information:

- Brand name, lot numbers and UPC code for the pet food fed to your dog or cat when it was ill. A lot number is a separate number assigned to each production lot of product. These are typically stamped on the bag/pouch or on the can lid. Lot numbers usually consist of a series of letters and numbers.

- If your pet received treatment by a veterinarian, the name, address, and telephone number of attending veterinarian

- Date illness first noticed

- Signs displayed

- Any veterinary reports available

**Q: What advice do you have for veterinarians concerned about this pet food recall?**

Veterinarians who have case files and post mortem results relative to cases where renal failure is involved and the clients were feeding food involved in the recall are encouraged to contact FDA through the complaint coordinator in their state http://www.fda.gov/opacom/backgrounders/complain.html. FDA is gathering as much information as possible to identify the nature and the extent of the problem.

**Q: How does FDA regulate pet food?**

The FDA's regulation of pet food is similar to that for other animal feeds. The Federal Food, Drug, and Cosmetic Act (FFDCA) requires that pet foods, like human foods, be pure and wholesome, safe to eat, produced under sanitary conditions, contain no

EXHIBIT A

harmful substances, and be truthfully labeled. In addition, canned pet foods must be processed in conformance with the low acid canned food regulations to ensure the pet food is free of viable microorganisms (see Title 21 Code of Federal Regulations (CFR), Part 113). There is no requirement that pet food products have premarket approval by FDA. However, FDA ensures that the ingredients used in pet food are safe and have an appropriate function in the pet food. Many ingredients such as meat, poultry, grains, and their byproducts are considered safe "foods" and do not require premarket approval. Other substances such as mineral and vitamin sources, colorings, flavorings, and preservatives may be generally recognized as safe (GRAS) or must have approval as food additives. (See Title 21 CFR, Parts 73, 74, 81, 573 and 582). For more information about pet foods and marketing a pet food, see FDA's Regulation of Pet Food and Information on Marketing A Pet Food Product.

**Q: What are the labeling requirements for pet foods?**

The FDA regulations require proper identification of the product, net quantity statement, name and place of business of the manufacturer or distributor, and a proper listing of all the ingredients in order from most to least, based on weight. Some states also enforce their own labeling regulations. Many of these regulations are based on a model provided by the Association of American Feed Control Officials (AAFCO). For more information about AAFCO, please visit its website. There are two documents on CVM's web site that provide more details about labeling requirements: Interpreting Pet Food Labels and Interpreting Pet Food Labels -- Special Use Foods.

**Q: Have there been other recalls involving pet foods?**

Yes. The following are recent pet food recalls: In February 2007, FDA advised consumers not to feed Wild Kitty raw cat food to their pets http://www.fda.gov/bbs/topics/NEWS/2007/NEW01562.htm after Salmonella was detected during routine testing performed by FDA. Wild Kitty eventually recalled the product http://www.fda.gov/oc/po/firmrecalls/wildkitty02_07.html. In December 2005, Diamond Pet Foods initiated a voluntary recall after aflatoxin was discovered in its product http://www.fda.gov/oc/po/firmrecalls/diamond12_05.html. For information on other pet food related recalls, please see <A href="/cvm/petfoods.htm.

**Q: Is this the largest recall ever of pet foods?**

It is hard to quantify the size of this recall or compare it to some of the other recalls in the past; however, it is a significant recall.

**Q: How many sick or dead cats and dogs have been reported to FDA?**

To date, the agency has received over 10,000 complaints. Confirmation that these may be related to the pet food recall takes time and requires follow up by our field staff. Veterinary reports and other evidence need to be collected for each case before any of these reports can be confirmed. In many instances there is insufficient information available to draw a conclusion about a possible association with pet food consumed and pet illness or death. The FDA's primary concern is in identifying the source of the contaminant, assuring that the recall is effective and providing information to the public.

**Q: Why can't FDA confirm the number of animals affected?**

Unlike human food there is no surveillance network for FDA to rely on to confirm cases. FDA must investigate each complaint and confirm whether or not the pet food was involved.

**Q: Is there any evidence of human illness that may be linked to exposure to contaminated gluten and the recalled pet food?**

No. As a precaution, FDA asked the Centers for Disease Control (CDC) to utilize its surveillance network to monitor for signs of human illness related to the recalled pet

EXHIBIT     A

food. CDC surveillance has not shown an increase in renal failure, which is the most likely health outcome that would be expected from this exposure .

**Q:What about the aminopterin? Is this latest finding in addition to aminopterin?**

FDA has not been able to confirm aminoptrein in samples it has tested.

**Q:How do you account for why NY State found aminopterin but FDA didn't?**

Our labs were not able to verify aminopterin. At this time, we cannot comment of the methodology or findings of NY State.

**Q:Are you working with any other organizations?**

As we said previously we are working with Cornell University. Additionally, Banfield the Pet Hospital, has reached out to FDA's Center for Veterinary Medicine and volunteered to provide us with any reports/data: The FDA is very appreciative of the Banfield information as it helps us in assessing the extent of the outbreak; however, it is only one piece of the puzzle and we must consider it in light of all of the other information we are gathering. We have been exchanging information with the American Veterinary Medical Association in order to ensure that it is providing accurate information to its members on how to report adverse events to the agency. Companies that sell pet food have also been very helpful and one company in particular has shared its independent testing results.

**Q:Are you seeing this more in cats than dogs?**

We are getting reports of illness in both dogs and cats. However, the evidence we've seen from the initial consumer complaints and from the Menu Foods taste tests indicate that cats appear to be more affected than dogs.

**Q: How do you dispose of the wheat gluten and contaminated pet food?**

With recalls, the firm will propose what to do with the product. Disposal options may include landfill, incineration or industrial uses.

Web page updated by mdt - May 7, 2007, 1:28 PM ET

---

CVM A-Z Index | Contact CVM | About CVM | Site Map
FDA Home Page | Search FDA Site | FDA A-Z Index | Contact FDA | Privacy | Accessibility | HHS Home Page

EMILY A. GARDNER          6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann,  Kelly Engle, Pam Gould and Erik Coral-Sands, | Civil No. 07-1-0848-05 SSM (Non-Vehicle Tort) |
| Plaintiffs, | **FIRST AMENDED DEMAND FOR JURY TRIAL** |
| v. | |
| MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unicorporated Canadian business; Doe Entities and Individuals 1- 100, | |
| Defendants. | |

**FIRST AMENDED DEMAND FOR JURY TRIAL**

Plaintiffs above-named, by and through their attorney, EMILY A. GARDNER, hereby

request trial by jury in the above-entitled matter.

DATED: Honolulu, Hawai'i, June 22, 2007

EMILY A. GARDNER
Attorney for Plaintiffs

EXHIBIT  A

EMILY A.GARDNER          6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiff

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands,<br><br>        Plaintiffs,<br><br>    v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unicorporated Canadian business; Doe Entities and Individuals 1- 100,<br><br>        Defendants. | Civil No. 07-1-0848-05 SSM (Non-Vehicle Tort)<br><br>**FIRST AMENDED SUMMONS TO ANSWER CIVIL COMPLAINT** |

## FIRST AMENDED SUMMONS TO ANSWER CIVIL COMPLAINT

MENU FOODS, INC.
MENU FOODS HOLDINGS, INC.
MENU FOODS INCOME FUND

To the above-named Defendants:

    You are hereby summoned and required to serve upon Plaintiffs' attorney, whose

EXHIBIT A

address is, **735 Bishop Street, Suite 402, Honolulu, Hawai`i  96813,** an answer to the First

Amended Complaint which is attached.  This action must be taken within **twenty (20) days** after

service of this summons upon you, exclusive of the day of service.  If you fail to make your answer

within the twenty (20) day time limit, judgment by default will be taken against you for the relief

demanded in the First Amended Complaint.

      This First Amended Summons shall not be personally delivered between 10:00 p.m. and

6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits,

in writing on this summons, personal delivery during those hours.

      A failure to obey this First Amended Summons may result in an entry of default and

default judgment against the disobeying person or party.

      DATED:  Honolulu, Hawai`i,  _____

                **SUMMONS
DENIED**
LEGAL DOCUMENTS BR

      _____

      CLERK OF THE ABOVE-ENTITLED COURT

2

EXHIBIT ___A___

'FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2007 JUN 25 PM 3: 58

H. CHING
CLERK

EMILY A.GARDNER        6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann,  Kelly Engle, <u>Pam Gould</u> and <u>Erik Coral-Sands</u>,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Menu Foods, Inc., a New Jersey Corporation; Menu Foods Holdings, Inc.,  a Delaware Corporation,  Menu Foods Income Fund, an unicorporated Canadian business; Doe Entities and Individuals 1- 100,<br><br>                    Defendants. | Civil No. 07-1-0848-05 SSM<br>(Non-Vehicle Tort)<br><br>**First Amended Summons to Answer Civil Complaint** |

**First Amended Summons to Answer Civil Complaint**

Menu Foods, Inc.
Menu Foods Holdings, Inc.
Menu Foods Income Fund

To the above-named Defendants:

        You are hereby summoned and required to serve upon Plaintiffs' attorney, whose

address is, **735 Bishop Street, Suite 402, Honolulu, Hawai`i  96813,** an answer to the First

Amended Complaint which is attached.  This action must be taken within **twenty (20) days** after

service of this First Amended Summons upon you, exclusive of the day of service.  If you fail to

make your answer within the twenty (20) day time limit, judgment by default will be taken against

you for the relief demanded in the First Amended Complaint.

      This First Amended Summons shall not be personally delivered between 10:00 p.m.

and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court

permits, in writing on this First Amended Summons, personal delivery during those hours.

      A failure to obey this First Amended Summons may result in an entry of default and

default judgment against the disobeying person or party.

      DATED:  Honolulu, Hawai`i, _____ JUN 2 5 2007 _____.

H. CHING

(SEAL — FIRST CIRCUIT COURT, STATE OF HAWAII)

_____
CLERK OF THE ABOVE-ENTITLED COURT

EXHIBIT A