IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE SYLVESTER, DAVID PANG, ANDREW GARCIA, RUTH CAMARGO, CHRIS HUBBARD, STACEY COLLINS, RANDALL BANDMANN, KELLY ENGLE PAM GOULD and ERIK CORAL-SANDS<br><br>Plaintiff,<br><br>vs.<br><br>MENU FOODS, INC., a New Jersey corporation; MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1-100,<br><br>Defendants. | CIVIL NO. CV07-00409 ACKKSC<br>(Non-Vehicle Tort)<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS

### A. PRELIMINARY STATEMENT

Defendants Menu Foods Holdings, Inc. and Menu Foods, Inc. (hereinafter collectively "Menu Foods")[1], move this Court to stay all proceedings in this action

---

[1] Defendants Menu Holdings Foods, Inc., and Menu Foods, Inc., were served on July 9 and July 13, 2007, respectively. Menu Foods Income Fund has not been properly served to date.

(including Menu Foods' obligation to answer or otherwise respond to the Complaint) for all parties pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to U.S.C. § 1407. In support thereof, Menu Foods sets forth the following:

Currently, there are over one hundred (100) federal actions that seek relief for individuals who purchased allegedly contaminated pet food from Defendants. Federal courts have subject matter jurisdiction over these state and common law based actions based on complete diversity of the parties and an amount in excess of $75,000 in controversy or pursuant to the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1332. Specifically, the pending cases allege that Defendants sold contaminated pet food to the general public and individuals whose pets consumed this pet food sustained injuries and/or death. Many of the pending cases seek to certify a class of United States residents who purchased allegedly contaminated pet food and economic and non-economic damages allegedly incurred as a result of Defendants' conduct.

## B. FACTUAL BACKGROUND

On March 30, 2007, three (3) separate motions with the Judicial Panel on Multidistrict Litigation ("JPML") for transfer and coordination or consolidation pursuant to 28 U.S.C. § 1407 were filed by three (3) different plaintiffs. Plaintiff Shirley Sexton filed the first MDL motion, seeking to transfer her case and

numerous other cases involving alleged injuries and/or death arising out of the purchase and/or consumption of pet food manufactured by defendants to the Central District of California. Plaintiff Christina Troiano filed the second MDL motion, seeking transfer to the Southern District of Florida. Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrance Mitchelle, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michelle Suggett and Don James filed their MDL motion to transfer the cases to the Western District of Washington.

On or about April 5, 2007, a fourth Motion was filed with the JPML by three plaintiffs with suits pending in the District of New Jersey, including Jayme Pittsonberger (07-CV-161-NLH), David Carter (07-CV-1562-NLH), and Jim Bullock (07-CV-1579-NLH). (See Motion and Memorandum of Law, attached as Exhibit A.)

Defendants filed their MDL response on or before April 19, 2007, and agreed that MDL consolidation is appropriate. On May 31, 2007, there were oral arguments before the JPML on the MDL motions. Although there were issues regarding venue, no party objected to the establishment of a MDL.

On June 19, 2007, the JPML issued a Transfer Order establishing the MDL *In re Pet Food Products Liability Litigation*, MDL Docket No. 1850, before the Honorable Noel Hillman, United States District Court Judge for the District of

New Jersey. (See Transfer Order, attached as Exhibit B.) In the Transfer Order, the JPML found that the 12 actions that were the subject of transfers motions before the Panel "involve common questions of fact, and that centralization under Section 1407 in the District of New Jersey will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *Id.* at 1-2. The JPML transferred those 12 actions to the MDL. The JPML further indicated that it had been notified of an additional 97 potentially related actions, which would be treated as tag-along actions. *Id.* at 1 n.1.

On June 28, 2007, the JPML issued the first conditional transfer order addressing 66 of the potentially related actions. Following the expiration of the period for objection to the transfer of the cases addressed therein, the Clerk of the JPML filed certified copies of the conditional transfer order in the relevant United States District Courts. (See copy of Certified CTO-1, attached as Exhibit C.)[2]

The instant action was removed to the United States District Court for the District of Hawaii on July 27, 2007. On August 2, 2007, the JPML was notified of this action as a related action. (See Notice of Related Actions, attached as Exhibit D.)

---

[2] The JPML received objections to the transfer of only one of the cases listed in the CTO-1, *Picus v. Wal-Mart Stores, Inc,.* in the U.S. District Court for the District of Nevada. The claims in the *Picus* case involve the labeleling of certain products; *Picus* does not involve product liability claims like the instant action and the others in the MDL.

-4-

## C. LEGAL ARGUMENT

1. <u>General overview</u>. A stay of all proceedings in this action pending a transfer decision by the JPML is necessary to promote judicial economy and avoid undue prejudice to the parties. This Court should not unnecessarily use its resources and time to supervise pre-trial proceeding and make rulings in a case which may be transferred to another district court and judge for further pre-trial proceedings. Additionally, since the pet food recall actions are in the beginning stages of litigation and the JPML is in the process of transferring all related actions to the MDL, no prejudice or inconvenience will result from entry of a stay. On the other hand, absent a stay, Menu Foods will be substantially prejudiced if it is required to duplicate efforts and expend significant resources defending multiple cases in jurisdictions around the country. For the reasons herein stated, Menu Foods respectfully moves this Court for an order staying all proceedings in this case pending a transfer decision by the JPML.

2. <u>Mainland cases.</u> Numerous courts have stayed proceedings pending determination by the MDL Panel of the appropriateness of coordination under § 1407. *See, e.g., Gonzalez, v. American Home Products, Corp.*, 223 F. Supp.2d 803 (S.D.Tex. 2002); *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, 2002 WL 31114069 (N.D.Tex. Sept. 23, 2002); *Moore v. Wyeth-Ayerst Laboratories*, 236 F. Supp.2d 509, 511 (D.Md. 2002); *Kohl v. American Home Prods. Corp.*, 78

F. Supp.2d 885 (W.D.Ark. 1999); *Republic of Venezuela v. Philip Morris Companies, Inc., et. al.*, 1999 WL 33911677 (S.D.Fla. 1999); *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D.Cal. 1997); *American Seafood, Inc. v. Magnolia Processing*, 1992 WL 102762 (E.D.Pa. May 7, 1992); *Arthur-Magna, Inc. v. Del-Val Fin Corp.*, 1991 WL 13725 (D.N.J. Feb. 1, 1991); *Rosenfeld v. Hartford Fire Ins. Co.*, 1988 WL 49065 (S.D.N.Y. May 12, 1988); *Portnoy v. Zenith Laboratories*, 1987 WL 10236 (D.D.C. Apr. 21, 1987). It is "incidental to the power inherent in every court to control the disposition of the cases on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings pending the MDL Panel's action. *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788 at *1 (E.D.La. Feb. 24, 1995).

Consistent with this authority, courts have stayed the pet food recall cases pending action by the JPML pursuant to consent motions or stipulations, or over objections of the plaintiffs. *See, e.g., McGuriman v. Menu Foods Ltd.*, 07-CV-2205 NLH (D.N.J.), Order (Docket No. 4) (noting that the court "previously entered an order ... staying all putative Class Actions filed in the District of New Jersey against Menu Foods ... arising out of allegations that the defendant manufacturer sold defective pet food"); *Ferrarese v. Menu Foods, Inc.*, 2:07-CV-

235-FTM (M.D. Fla.), Order (Docket No. 22); *Rusiecki v. Menu Foods, Inc.*, CV-07-5204-RJB (W.D. Wash.), Stipulation and Order Staying All Proceedings and for Preservation of Evidence (Docket No. 3); *Howe v. Menu Foods, Inc.*, CV-07-02060-GHK (C.D. Cal.), Order Staying all Proceedings and for Preservation of Evidence (Docket No. 26); *Finestone v. Menu Foods, Inc.*, CV-07-02338-CAS (C.D. Cal.), Order Staying All Proceedings and for Preservation of Evidence (Docket No. 30); *Payne v. Menu Foods, Inc.*, 07-CV-0705-JAH (S.D. Cal.), Order Granting Defendant Menu Foods, Inc's Motion to Stay (Docket No. 43); *Majerczyk v. Menu Foods, Inc.*, 07-CV-1543 (N.D. Ill.), Order (Docket No. 45).

3. <u>2007 Hawaii Federal Court ruling (Judge Seabright).</u> A recent Order by Judge Seabright supports a stay in this case. In *McClelland v. Merck*, 2007 WL 178293 (D. Hawaii January 19, 2007), plaintiffs filed suit in State Court against Merck and others for alleged Vioxx related injuries. Merck removed the case to Federal Court; plaintiffs filed a Motion to Remand; Merck filed a Motion to Stay pending the JPML's possible transfer of the case from Hawaii to Louisiana. Magistrate Judge Barry Kurren ruled against Merck on both issues -- i.e., he refused to stay the case and recommended remand. Judge Seabright failed to follow the Magistrate's decision on both issues -- i.e., he reversed the Magistrate's decision on the stay and did not accept the recommendation to remand. Judge Seabright held that (a) removal to Federal court was not clearly improper; and

WASH1\4910576.1

(b) that there were identical or similar jurisdictional issues raised in other Vioxx related cases that have or may be transferred to the MDL proceeding. Judge Seabright granted Merck's Motion to Stay, holding:

> "A judge has wide discretion to use the inherent power of the federal court to promote judicial efficiency and prevent prejudice to the parties in granting or denying a motion to stay." *Association of Irritated Residents v. Fred Schakel Dairy*, ____ F. Supp.2d____, 2006; WL 3079020 at *7 (E.D.Cal.2006). When ruling on a motion to stay, a district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated. *See Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D.Cal.1997). Although granting the stay will likely cause delay to Plaintiffs, the court finds that this prejudice is greatly outweighed by the hardship and inequity to Merck, and, more importantly, by the interests of judicial economy. The uniform treatment of remand motions avoids inconsistent rulings, promotes respect for the law, and conserves judicial resources. The transferee court "has been dealing with cases of this type for over a year and has developed extensive experience handling the pre-trial issues that commonly arise in the Vioxx products liability litigation, including motions for remand." *Anderson*, 2007 WL 43770 at * 1. Accordingly, after balancing the competing interests, the court finds that this matter should be stayed pending a decision on transfer by the JPML. [*McClelland v. Merck*, 2007 WL 178293 (D. Hawaii January 19, 2007) at *3.]

In the case *subjudice*, all three factors quoted above by Judge Seabright favor a stay. Thus, this Court should stay all proceedings pending a transfer decision by the JPML.

4. <u>Judicial economy mandates a stay pending a transfer decision by the JPML.</u> Considerations of judicial economy weigh heavily in favor of a stay. The

express language of 28 U.S.C. § 1407 provides that civil actions may be transferred for coordinated or consolidated pretrial proceedings to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The JPML already has determined that transfer of the pet food recall cases is necessary and appropriate to achieve the judicial economies that underlie § 1407.

Menu Foods reasonably anticipates that the JPML will transfer this action to the MDL. The prerequisite for transfer of a case to an MDL is commonalities of fact. 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings"). Plaintiffs' claims, like those is cases already transferred to the MDL, arise out of Menu Foods' voluntary recall of pet foods manufactured between November 6, 2006, through March 6, 2007. *See* Complaint ¶¶ 1-3.[3]

Absent a transfer of this case to the MDL for coordinated pretrial proceedings, there is a substantial risk of inconsistent and/or conflicting pretrial rulings on discovery and other issues. In addition, discovery with respect to Menu Foods' conduct in this and other cases transferred to the MDL will be substantially similar and will involve the same and/or similar documents and witnesses.

---

[3] Although Menu Foods believes there would be no merit to an objection to the transfer of this action by Plaintiffs, they will have the opportunity to file such an objection before the JPML. *See* JPML Rule 7.4.

Further, efficiency in the administration of justice will be served by transfer of this case to the MDL because one judge, rather than multiple judges, can supervise all pretrial proceedings and render rulings that are consistent.

In addition, if this case is not stayed, the Court will lose the potential efficiencies that would be gained by having pretrial issues, particularly with respect to discovery, decided by a single court. In *Gonzalez v. American Home Products, Corp.*, consumers brought a product liability action against manufacturers and distributors of phenylpropanolamine (hereinafter "PPA") to recover for physical injuries sustained as a result of exposure to PPA. *Gonzalez*, 223 F. Supp.2d at 804. In granting defendants' motion to stay pending a decision of the MDL Panel, the Court held that "[j]udicial economy and consistency of result dictate that this key issue be decided once, not countless times." *Gonzales*, 223 F. Supp.2d at 805.

Like *Gonzalez*, the interests of judicial economy and consistency warrant a stay here. Without a stay, this Court will be required to expend its time and resources familiarizing itself with the intricacies and complexities of this complicated products liability litigation that may be transferred to another court. Alternatively, if this case is not stayed and transferred, each ruling and action taken by this Court may affect other cases without giving the attorneys handling those cases an opportunity to provide input to the Court.

Additionally, if a stay is not granted and this case proceeds forward but is later transferred to the MDL, the Court's rulings are subject to reconsideration in the MDL. "The pretrial powers of the transferee court include the powers to modify, expand, or vacate earlier discovery orders." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 489 (J.P.M.L. 1968). In *Kohl v. American Home Prods. Corp.*, a consumer brought a products liability action against manufacturers, distributors and sellers of the pharmaceutical drugs, fenfluramine and phentermine, to recover for injuries allegedly caused by the drugs. *Kohl*, 78 F. Supp.2d at 887. In granting defendants' motion to stay pending the transfer of the case to the MDL Panel, the Court held that judicial economy would be best served if litigation was facilitated in the appropriate forum. *Kohl*, 78 F. Supp.2d at 888. "If the MDL motion is granted, all of the Court's time, energy and acquired knowledge regarding the action and its pretrial procedures will be wasted." *U.S. Bank*, 2002 WL 31114069 at *2.

This Court, like the district court in *Kohl*, should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard [for pre-trial purposes] by another judge." *Rivers*, 980 F. Supp. at 1360. Moreover, this Court should abstain from scheduling status conferences and/or issuing discovery orders because "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to

-11-

handle the consolidated litigation." *Id*. Furthermore, to avoid the risk of inconsistent substantive legal rulings, pretrial proceedings in this matter and other actions should proceed in an orderly, coordinated fashion, as directed by the MDL Court selected by the JPML. Accordingly, a stay in this case is appropriate as it will further the just and efficient conduct of this litigation.

  5. <u>The balance of equities weighs heavily in favor of a stay as Plaintiffs will suffer no prejudice, while Menu Foods will suffer undue hardship absent a stay.</u> In addition to the waste of judicial resources inherent in proceeding with this matter prior to a ruling by the Judicial Panel, the balance of the parties' hardships strongly favors a stay. In *Moore v. Wyeth-Ayerst Laboratories*, a patient who took a prescription diet drug brought a products liability action against the drug manufacturer. *Moore*, 236 F. Supp.2d at 511. The court in that case held that the potential prejudice to the drug manufacturer warranted a stay of proceedings pending the decision of Judicial Panel for transfer and consolidation. *Id*. Specifically, the court held that "[c]entralization is … necessary in order to eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings … and conserve the resources of the parties, their counsel, and the judiciary." *Id*.

  Menu Foods would be substantially prejudiced by duplicative discovery and motion practice if this action is not stayed. *American Seafood*, 1992 WL 102762 at *2 (holding that "[t]he duplicative motion practice and discovery proceedings

-12-

demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of a stay"). Menu Foods may be served with multiple discovery requests, deposition notices, and various motions resulting in duplicative and costly responses and replies being prepared multiple times in different jurisdictions. This burden is a clear, definable hardship weighing in favor of staying this action until the MDL renders a decision on whether the case should be transferred to the MDL.

A stay will not, however, unduly prejudice Plaintiffs in this matter. In *Republic of Venezuela v. Philip Morris Companies, Inc., et.al.*, the Republic of Venezuela sought damages from the defendants due to, *inter alia*, costs allegedly incurred as a result of paying for "medical care, facilities, and services" for Venezuelan residents injured as a result of the use of tobacco. *Republic of Venezuela*, 1999 WL 33911677 at *1. The court in granting defendant's motion to stay held that "upon consideration of what effect a brief stay may have on [Plaintiff], the Court finds that Plaintiff will not be prejudiced by the granting of a stay pending the JPML's decision." *Id.*

Here, there has been no discovery in the case at bar. Since the action is in the beginning stages of litigation, no prejudice or inconvenience will result from transfer and coordination. Any slight delay that Plaintiffs may experience in this case will be minimal and the prejudice to Menu Foods would far outstrip any harm to Plaintiffs. *See Arthur-Magna*, 1991 WL 13725 at *1 (noting that even if a

-13-

temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay). Indeed, all parties, including Plaintiffs here, will benefit through increased efficiency and coordinated pretrial case management in the MDL court. Further, Menu Foods is not asking this Court to stay the proceedings indefinitely. Menu Foods is only asking the Court to issue a stay to permit the JPML to determine whether this action should be transferred to the MDL. As such, any potential delay is outweighed by the potential efficiencies available in a coordinated MDL proceeding. Therefore, the benefits of staying this proceeding far outweigh any minimal inconvenience to Plaintiffs. Thus, the granting of a stay is necessary and appropriate.

### D. CONCLUSION

For all of the foregoing reasons, it is appropriate for this Court to exercise its sound discretion to stay these proceedings pending the decision of the JPML regarding transfer of this action to the MDL. A stay would further the interest of judicial economy and promote just and efficient conduct of this litigation, while denying a stay would unnecessarily waste the efforts and resources of this Court and all parties. Without the stay, Menu Foods will suffer undue hardship and inequity and the purpose for coordination and consolidation pursuant to 28 U.S.C. § 1407 will be undermined.

WHEREFORE, Menu Foods respectfully requests this Honorable Court to enter an Order staying further proceedings in this action for all parties, including but not limited to Menu Foods' obligation to file responsive pleadings, pending the transfer decision by JPML.

DATED: Honolulu, Hawaii, ____August 2, 2007____.

_____
CHAD P. LOVE
BARBARA J. KIRSCHENBAUM

Attorneys for Defendants Menu Foods, Holdings, Inc. and Menu Foods, Inc.