ORIGINAL

EMILY A. GARDNER        6891
Attorney at Law
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808)-540-0200
Facsimile: (808)-540-0201
Email: eagardner@hawaii.rr.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 21 2007

at __ o'clock and __ min. __ M.
SUE BEITIA, CLERK

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT CIRCUIT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands<br><br>Plaintiffs,<br><br>v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unicorporated Canadian business; Doe Entities and Individuals 1- 100,<br><br>Defendants. | Civil No. CV07-00409HGKSC<br>(Non-Vehicle Tort)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MENU FOODS INCOME FUND'S MOTION TO QUASH, OR, ALTERNATIVELY, TO DISMISS; DECLARATION OF PETER HUNT; DECLARATION OF EMILY A. GARDNER; EXHIBITS "1" – "6"; CERTIFICATE OF SERVICE |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MENU FOODS INCOME
FUND'S MOTION TO QUASH, OR ALTERNATIVELY, TO DISMISS

I.   INTRODUCTION

Defendant Menu Foods Income Fund, a Canadian business entity, (hereinafter "Defendant") was served in the aforementioned action by a professional process server who resides in the Province of Ontario, Canada on July 13, 2007. As stated in the server's declaration, attached hereto, an inquiry was made upon arriving at Defendant's

place of business as to who could receive service of a Summons and Complaint from the United States of America, and Mark Wiens, who identified himself as the Chief Financial Officer of Menu Foods Income Fund, indicated he was an adult who was in care and control of the business and could accept service on behalf of the Defendant, which he did.[1]

Despite the fact that service on Defendant Menu Foods Income Fund was patently effective, Defense counsel has claimed that service was ineffective because: 1) it was not made through the Hague Convention; and, 2) Mark Wiens was ineligible to accept service because he was not a trustee of Menu Foods Income Fund.

Plaintiffs' counsel informed Defense counsel, several times, that it was not necessary to go through the Hague Convention when serving a summons and complaint from the United States on a Canadian business entity. In doing so, Plaintiff's counsel told Defense counsel that this position had been confirmed by three different process serving companies operating in both Canada and the United States, prior to attempting service as the issue posed a concern. Nonetheless, Defense counsel persisted in insisting that service was ineffective because it had not been made through the Hague Convention. Defendant's motivation was clearly to convince Plaintiff's counsel to agree to sign a stipulation to provide an extension of time for the Defendant to answer, in exchange for which Defense counsel would agree to accept service for the Canadian defendant.

When Plaintiff's counsel refused to accept Defense counsel's position that service on the Canadian defendant was ineffective because it had not been made through the Hague Convention, Defense counsel then informed Plaintiff's counsel that Mark Wiens

---

[1] Service was effected two weeks prior to Defendants' filing their Notice of Removal with this court on July 27, 2007. Return of Service documents were filed in the Circuit Court of the First Circuit, State of Hawaii.

2

was ineligible to accept service because he was not the Chief Financial Officer of Menu Foods Income Fund and was not a trustee of Menu Foods Income Fund. Significantly, Defense counsel never simply requested an extension for time to answer or otherwise respond, but kept insisting that service on the Canadian defendant was defective, as rationale for stipulating to an extension.

As shown below, service of the Defendant through the Hague Convention was not necessary. In addition, Mark Wiens is the Executive Vice President and Chief Financial Officer of "Menu Foods GenPar Limited," a general partnership formed to undertake the administrative duties of Menu Foods Income Fund, and the individual recognized as the contact person for Menu Foods Income Fund in SEDAR (System for Electronic Document Analysis Retrival, the electronic filing system for disclosure documents of public companies and mutual funds across Canada). No other individual has been designated to accept service.

Because both these facts relating to service of Defendant are facts which Defense counsel certainly knew or, with minimal effort should have known, it would appear that the sole purpose of Defendant's Motion to Quash, or in the alternative Dismiss was to effect a delay in the proceedings, upon the chance that Defendant's Ex Parte Motion for an Extension of Time to Answer was not granted. This type of conduct is strongly discouraged by Fed. R. Civ. P. 11 (b) (1), and worthy of sanctions. Local Rule 11.1 of the Rules of the United States District Court for the District of Hawaii provides that failure of counsel to comply with any provision of Rule 11 is grounds for the imposition of sanctions, which may be imposed by the court *sua sponte*.

II.   ARGUMENT

A.   <u>Service on Defendant Menu Foods Income Fund Was Effective Because Canada Affirmatively Allows Service Outside the Hague Convention</u>

Service of process upon foreign business entities is governed by Fed. R. Civ. P. 4(h). In the United States, a foreign entity may be served either pursuant to the laws of the state in which the district court is located or by delivering a copy of the summons and complaint to an officer or agent within the United States. Outside the United States, service may be accomplished in a number of different ways, including by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (hereinafter the "Hague Convention"). Fed. R. Civ. P. 4(h) (2), incorporating, Fed. R.Civ. P. 4(f). Because the United States and Canada are both parties to the Convention, it is applicable to the issue of service in the instant action.

While the Hague Convention provides for service of judicial documents abroad through a designated Central Authority, it also permits alternate channels of service of process so long as they are not objected to by the receiving State, Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 1 et seq., Fed. Rules of Civ. Proc. Rule 4 note, 28 U.S.C.A.; Fed. Rules Civ. Proc. Rule 4(d) (3), 28 U.S.C.A.

One of the sections of the Convention that relates to service outside a Central Authority is Article 10, which allows service through "the judicial officers, officials, or other competent person in the State of designation." Hague Convention, Article 10. The section of the Convention that permits a State party to object to alternate methods of service is Article 21. Article 21, in turn provides, that:

> Each contracting State shall, at the time of deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands… where appropriate, of… opposition to the use of methods of transmission pursuant to articles 8 and 10…

20 U.S.T. 361, Art.21

Upon its accession to the Convention, Canada did not avail itself of the opportunity to object to the methods of service provided for under Article 10, and in fact affirmatively stated that it does *not* object to the methods of service provided for under Article 10. International Agreements, at 283; see also http://www.hcch.net/e/status/stat14e.html # ca (Canada Accession Notification, Declaration III).

Thus, because Canada did not object to the methods of service provided for in Article 10, and stated affirmatively that it does not object, effective service may be made by judicial officers, officials or other competent persons of the State of origin, or, directly through judicial officers, officials or other competent persons of the State of designation. In the case at hand, service was made by a Canadian process server—a competent person—of the State of designation. Service of Defendant Menu Foods Income Fund was therefore effective under Article 10 (b) of the Convention.

Case law supports this conclusion. In *Dimensional Communications, Inc. v. Oz Optics, LTD*; 218 F. Supp. 2d 653 (D. N.J. 2002), an American corporation brought an action against a Canadian limited partnership, located in Ontario, for breach of contract. Service was made upon the Vice President of Operations for Oz Optics, by an experienced Canadian process server. Oz Optics claimed service was ineffective because Dimensional Communications failed to serve through the Hague Convention, and filed a

motion to quash service, or, in the alternative, dismiss. The Court held that service upon the Vice President of Oz Optics was effective because the Hague Convention authorized service of process under Article 10 (b), and the Canadian process server was competent to effect service of process under the Hague Convention.

Essentially the same set of facts are at play here. American plaintiffs served a Canadian business entity, located in Ontario Canada, through a professional Canadian process server. As stated above, Cananda, as the state of designation, expressly authorizes service of process by this means under the Hague Convention, and the process server was a competent individual to effect service under the Convention. Defendant's Motion must therefore be denied.

B.  Service on Defendant Menu Foods Income Fund Was Effective through Mark Wiens Because He is an Officer of the Fund, and Affirmatively Stated He was Eligible to Accept Service on Defendant's Behalf

According to Defendant's own company profile information:

Menu Foods Income Fund is an unincorpoated open-ended trust established under the laws of the province of Ontario pursuant to a declaration of trust dated March 25, 2002. The Fund is administered by its Trustees and by Menu Foods GenPar Limited ("GenPar") pursuant to an administrative agreement entered into by the Fund and GenPar, among others, on May 22, 2002. (Emphasis added).

See, Menu Foods Income Fund, Profile, attached hereto as Exhibit "1" at http://www.menufoods.com/about_us/index.html

When Peter Hunt, the Canadian process server, arrived at Defendant's headquarters on July 13, 2007, he stated that he had a summons and complaint from the United States to serve and that they must be left with an adult who was in care and control of the business. Mr. Hunt inquired who was eligible to accept service on behalf of

the Fund. Mr. Mark Wiens, affirmatively represented that he was able to accept service, identified himself as the "Chief Financial Officer of Menu Foods Income Fund," and proceeded to accept service on behalf of Defendant. At the time Mr. Wiens accepted service, he appeared to be in control of the business. (See, Declaration of Peter Hunt, attached hereto).

Again turning to Defendant's own company profile information, Mr. Mark Wiens, is listed among the Fund's "Trustees, Directors and Management," as "Executive Vice President and Chief Financial Officer of Menu Foods GenPar Limited." a general partnership that serves as the administrative arm of Menu Foods Income Fund. See, Menu Foods Income Fund, Trustees, Directors and Management, at http://www.menufoods.com/ir/trustees/trustees_etc.html, attached hereto as Exhibit "2," and, Menu Foods Income Fund webpage on Mark A. Wiens, which provides that he is Menu Foods' "Executive Vice President and Chief Financial Officer," at http://www.menufoods.com/ir/trustees/mark_a_wiens.html, attached hereto as Exhibit "3".

Significantly, Mr. Wiens is also designated as the contact person for Menu Foods Income Fund on Canada's SEDAR system for disclosure documents of public companies and mutual funds across the country. He is the individual noticed on all the Canadian filings. There is no other individual designated to accept service. (See, SEDAR entry for Menu Foods Income Fund, attached hereto as Exhibit "4," at http://www.sedar.com/DisplayProfile.do?lang=EN&issuerType=03&issuerNo=00017624)

Mr. Wiens also credits himself with being the Chief Financial Officer of Menu Foods Income Fund in a Canadian news article, and . See, "Menu Foods CFO Sold Stock

Before Pet Food Recall," CTV.ca, April 10, 2007, at

http://www.ctv.ca/servlet/ArtileNews/story/CTVNews/20070410/menu_foods_070410/2 00..., attached here to as Exhibit "5"). He has also certified Defendant's interim filings for the second quarter of 2007, as "Executive Vice President and Chief Financial Officer of Menu Foods GenPar Limited on behalf of Menu Foods Income Fund." (See Form 52-109F2, Certification of Interim Filings, dated August 9, 2007, attached hereto as Exhibit "6.")

Yet, despite the overwhelming evidence that Mark Wiens *is* the Executive Vice President and Chief Financial Officer of Menu Foods Income Fund, though GenPar, Limited, Defendants, in their Motion make the stunning claim that he is not the Fund's Chief Financial Officer, and is therefore, ineligible to accept service on the Fund's behalf. There are no other individuals noted among Defendant Menu Foods Income Fund's Trustees, Directors and Management as serving in the capacity of the CFO, nor any other individuals designated as being able to accept service.

C.   The Disingenuous Nature of Defendant's Claims and Motion Necessitate Sanctions

I would not normally seek the imposition of sanctions for what might be an error or mistake by opposing counsel. I am only seeking them here because the misrepresentations made to Plaintiffs' counsel and the court regarding service of Defendant Menu Foods Income Fund appear to have been made deliberately and with the express intent to harass and effect a delay in the proceedings. Acting on such motivations is punishable by sanctions under Fed. R. Civ. P. 11, and L.R. 11.1.

Defense counsel was told numerous times that it was not necessary to go through

the Hague Convention to serve a Canadian business defendant, and that this fact had been corroborated by a number of different process serving companies who operate in both Canada and the United States. Rather than attempt to determine whether or not this was true, Defense counsel persisted in making the argument that service was defective because it had not been made through the Convention.

When Defense counsel was unable to convince Plaintiff's counsel that service of Defendant was defective for this reason, he then began to claim that service was defective because Mr. Wiens was not a trustee of the Defendant open-ended trust and was not eligible to accept service. As shown above, both these representations were patently false, and were or should have been known by Defense counsel at the time he made them.

It would appear as though Defense counsel's only basis for raising these disingenuous arguments was to effect a delay in the proceedings in case his Ex Parte Motion for an Extension of Time to Answer, filed August 3, 2007, was not granted. Defense counsel never simply asked for an extension. He only insisted—by bullying— that service was defective and that a stipulation was needed to cure the defect and provide an extension of time to answer. (See Declaration of Emily A. Gardner, attached hereto). This type of misrepresentation seems to be the type of which Rule 11 was meant to discourage. Local Rule 11.1 makes it clear that it is squarely within the court's province to issue sanctions under circumstances such as these.

III.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion be denied and that Plaintiffs be awarded sanctions for the reasonable cost of having to defend this Motion.

DATED: HONOLULU, HAWAII, AUGUST 21, 2007

EMILY A. GARDNER
Attorney for Plaintiffs
Valerie Sylvester et al.