LOVE & KIRSCHENBAUM
A LIMITED LIABILITY LAW COMPANY

CHAD P. LOVE 1617-0
BARBARA J. KIRSCHENBAUM 5825-0
1164 Bishop Street, Ste. 1105
Honolulu, Hawaii 96813
Tel. No. 546-7575

Attorneys for Defendants Menu Foods
Inc., Menu Foods Holdings, Inc., and
Menu Foods Income Fund

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE SYLVESTER; DAVID PANG; ANDREW GARCIA; RUTH CAMARGO; CHRIS HUBBARD; STACEY COLLINS; RANDALL BANDMANN; KELLY ENGLE; PAM GOULD; and ERIK CORAL-SANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>MENU FOODS, INC., a New Jersey corporation; MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES and INDIVIDUALS 1-100,<br><br>Defendants. | CIVIL NO. CV 07-00409 ACK-KSC (Non-Vehicle Tort)<br><br>MENU FOODS, INC., MENU FOODS HOLDINGS, INC., AND MENU FOODS INCOME FUND'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND, FILED 08/26/07; EXHIBITS A THRU E; DECLARATION OF CHAD P. LOVE; CERTIFICATE OF SERVICE<br><br>**HEARING SET:**<br>**DATE:** Mon., 10/01/07<br>**TIME:** 9:30 A.M.<br>**JUDGE:** Kevin S. C. Chang |

**MENU FOODS, INC., MENU FOODS HOLDINGS, INC., AND MENU FOODS INCOME FUND'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND, FILED 08/26/07**

Defendants MENU FOODS, INC., MENU FOODS HOLDINGS, INC., and MENU FOODS INCOME FUND (collectively, "Menu Foods") submit this memorandum of law in opposition to Plaintiffs' Motion to Remand.

## I. INTRODUCTION

This product liability action arises out of the nationwide recall of pet food manufactured by Menu Foods and other manufacturers. Plaintiffs' allegations are virtually identical to those made in over one hundred such cases filed throughout the nation. With the exception of this and another case in Hawaii involving the same counsel, every products liability case arising out of the pet food recall in federal court has been transferred to a Multidistrict Litigation ("MDL") pending in New Jersey District Court. This case (as well as the other pet food recall case pending in this Court) already has been conditionally transferred to the MDL by the Judicial Panel on Multidistrict Litigation (the "JPML") (*see* Ex. A, CTO), and there currently is a motion pending before the JPML to determine final transfer.[1] It

---

1. Menu Foods expects that the JPML will reject Plaintiffs' objection to transfer and will send this case to the MDL for coordinated proceedings in the MDL, consistent with the principles of judicial efficiency underlying federal multi-district litigation. All of these cases stem from the same pet food recall.

is common practice for federal courts in these circumstances to defer ruling on a motion to remand pending the JPML's decision on transfer.  Menu Foods respectfully requests that, at a minimum, this Court follow that practice.

Should this Court address the merits of Plaintiffs' remand motion, however, it is clear that this case belongs in federal court.  Plaintiffs are ten individual pet owners who purport to seek damages for their alleged veterinary expenses, lost wages, psychiatric medical expenses, and "over $500,000" in punitive damages. Despite these alleged damages, Plaintiffs each claim to come just shy of the federal jurisdictional requirement of $75,000.  But Plaintiffs' own judicial admissions, as well as simple common sense, demonstrate that Plaintiffs' attempt to avoid federal jurisdiction fails.

Plaintiffs' motion should be denied or, alternatively, the Court should stay a decision on Plaintiffs' motion while the JPML determines whether to transfer this case to the MDL.  Either result almost certainly will allow this case to be addressed in the most appropriate forum possible: an MDL that has been established for cases involving identical allegations that have been made throughout the nation in pet food recall cases.

## II.     PROCEDURAL BACKGROUND

This action was commenced by eight Plaintiffs on June 11, 2007, in the Circuit Court of the First Circuit, State of Hawaii.  On June 22, 2007, Plaintiffs

amended their Complaint to add two more Plaintiffs. (Ex. B, Plaintiffs' First Amended Complaint.) On July 27, 2007, Menu Foods, Inc. and Menu Foods Holdings, Inc. timely filed a Notice of Removal under 28 U.S.C. §1441 because complete diversity is present and the pleadings and other court filings demonstrate that at least one plaintiff seeks damages and attorneys' fees above the $75,000 threshold required for federal diversity jurisdiction.[2]

## III. ARGUMENT

Plaintiffs do not dispute diversity of citizenship. The only issue for this Court is whether the $75,000 amount-in-controversy requirement is met for at least one of the ten Plaintiffs. Before even reaching that issue, however, this Court must decide whether to stay a decision on Plaintiffs' motion pending a decision from the JPML on transfer.

### A. This Court Should Defer Ruling on the Motion to Remand Pending Determination of Transfer of this Case to the MDL

There are currently over one hundred similar actions, arising out of the same facts and circumstances, which have been transferred to an MDL in the United States District Court for the District of New Jersey for cases arising out of the nationwide pet food recall. The MDL was established to ensure that this large-

2. Menu Foods' statements and arguments regarding the quantum of damages are based on Plaintiffs' allegations and are not admissions of the veracity of such allegations or the measure of actual damages, both of which Menu Foods disputes.

scale litigation will proceed through discovery and pre-trial proceedings in an orderly, efficient, and coordinated fashion. *See* 28 U.S.C. § 1407(a) (authorizing transfer of cases with "common questions of fact … for coordinated or consolidated pretrial proceedings … for the convenience of parties and witnesses and … the just and efficient conduct of such actions"). The JPML consistently has recognized that the primary purpose of consolidating such cases is to conserve judicial and party resources, avoid duplicate discovery, prevent inconsistent rulings, and avoid conflicting scheduling requirements. *See, e.g.*, *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005).

This action was conditionally transferred to the MDL on August 20, 2007. (Ex. A, CTO.) Plaintiffs have objected to the transfer, and the matter should be fully briefed by late October, after which the JPML will make a final decision on whether to transfer this action to the MDL. During this short time period, this Court should defer ruling on Plaintiffs' remand motion consistent with common federal practice of staying any determination of threshold jurisdictional issues pending an MDL transfer. "Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." *Good v. Prudential Ins. Co. of Am.*, 5 F.Supp.2d 804, 809 (N.D. Cal. 1998); *see also Michael v. Warner-*

*Lambert Co.*, 2003 U.S. Dist. LEXIS 21525, at *3-4 (S.D. Ca. Nov. 20, 2003) ("The general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case to the MDL panel.") (quoting *Jackson v. Johnson & Johnson, Inc.*, 2001 U.S. Dist. LEXIS 22329, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001)); *see, e.g., Conroy v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004) (finding that a stay and deference to the MDL transferee court is particularly appropriate where the parties contest issues that are likely to arise in other actions pending in the consolidated proceedings); *Bd. of Trs. of Teachers' Ret. Sys of Ill. v. Worldcom, Inc.*, 244 F.Supp.2d 900,905 (N.D. Ill. 2002) (staying case, including determination of plaintiff's motion to remand, pending JPML transfer decision, and stating "[h]aving one court rather than three decide complex jurisdictional issues obviously saves judicial resources"); *Wienke v. Microsoft Corp.*, 84 F.Supp.2d 989, 900 (E.D. Wis. 2000) (staying action, including determination of remand motion, pending JPML transfer decision after finding that stay would serve the interests of judicial economy and avoid inconsistent results in multiple venues).

In light of this case's relationship to the MDL litigation, and in furtherance of judicial economy and the policy underlying multi-district litigation, the balance

of equities clearly tips in favor of federal jurisdiction. *See North v. Merck & Co., Inc.*, 2005 U.S. Dist. LEXIS 27628, at *6 (W.D.N.Y. Nov. 4, 2005) ("Finally, I find that the equities tip in favor of [defendant] for staying this action until the issue of transfer is resolved. Although plaintiff claims that she will suffer prejudice by imposition of the stay, I find that the risk of hardship to [defendant] of engaging in duplicative motion practice and discovery proceedings outweighs any prejudice that could potentially inure to her"). Accordingly, this Court should defer ruling on Plaintiffs' Motion to Remand until the JPML decides whether this case more appropriately belongs in the pet food recall MDL.

**B. If the Court Reaches the Merits of Plaintiffs' Motion, It Should Conclude that Federal Jurisdiction is Appropriate.**

**1. The Legal Standards for Determining Amount-in-Controversy**

It is the damages sought, not the damages (if any), that ultimately will be recovered that determines whether the $75,000 requirement is met. *See Lao v. Wickes Furniture Co., Inc.*, 455 F. Supp. 2d 1045, 1049 (C.D. Ca. 2006) ("The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy), not whether plaintiff is likely to win or be awarded everything he

seeks"). In multi-plaintiff actions, only one plaintiff must meet the $75,000 requirement. 28 U.S.C. § 1332(a); 28 U.S.C. §1367.[3]

**2. Admissions Made by Plaintiffs in Court Documents and the Complaint Demonstrate that the Amount in Controversy Exceeds $75,000 for at Least One Plaintiff.**

Before Plaintiffs amended their Complaint, they filed a "Request to Exempt From Court Annexed Arbitration Program" in order to demonstrate that Plaintiffs' damages were so large that the case was not appropriate for arbitration. (Ex. C.) In this pleading, Plaintiffs state that they believe the probable "jury award, not reduced by the issue of liability, and exclusive of attorney's fees, interest and costs will be in the excess of $150,000" (Ex. C, ¶33), and that if they "were permitted to pray for a specific amount of punitive damages, [they] would seek over $500,000." (*Id.* at ¶34.) These admissions, coupled with a logical interpretation of Plaintiffs' allegations and a reasonable assessment of likely attorneys' fees, easily satisfy the requisite amount-in-controversy here.

---

3. Plaintiffs' application of *Lowdermilk v. United States Bank National Association*, 479 F.3d 994 (9th Cir. 2007), is far too narrow for the present circumstances. *Lowdermilk* involved a class action in which it was necessary to know the class size to determine whether total class damages claimed met the $5,000,000 jurisdictional amount under the Class Action Fairness Act. The court determined that the defendant-employer had the best records on class size (*i.e.*, its own employment records) and therefore was best positioned to assess class size. 479 F.3d at 1002. In contrast, this case is not a class action, and there is no uncertainty as to the number of Plaintiffs. The sole issue is the amount of damages they claim. As the following discussion demonstrates, Plaintiffs have admitted their individual claims exceed $75,000.

a) Punitive damages

Plaintiffs admit that they seek “over $500,000” in punitive damages. (Ex. C, ¶34.) While Plaintiffs now attempt to back away from this claim by saying they meant that to be the top range of their entire damages (*see* Pl. Mem. at 10), no reasonable interpretation of paragraph 34 in their Request to Exempt supports this assertion. That paragraph relates specifically to punitive damages, and Plaintiffs represented to the Court then – at a time when there were only eight Plaintiffs – that they “would seek over $500,000.” (Ex. C, ¶34.) This unequivocal statement sets a half million dollars as the floor, not the cap, for the eight original Plaintiffs’ punitive damages claims. Simple math leads to a conclusion that each of these eight plaintiffs seeks at least $62,500 ($500,000 ÷ 8) in punitive damages alone.

There now are ten Plaintiffs. Plaintiffs illogically claim that additional Plaintiffs reduce damages per Plaintiff. This makes no sense. Plaintiffs have gone out of their way to highlight that each Plaintiff has his or her own distinct injury. (*See* Pl. Mem. at 7.) It naturally follows that each of the now ten Plaintiffs has his or her own punitive damages claim, increasing the collective punitive damages claim even further above $500,000. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001) (recognizing that the addition of more plaintiffs generates more total punitive damages claimed, because each of the plaintiffs was allegedly “wronged by the defendant in the same way”). Plaintiffs’ Request to

Exempt demonstrates that each of the ten Plaintiffs seeks punitive damages of at least $62,500.[4]

b) Attorneys' fees

Plaintiffs each seek attorneys' fees, and they recognize that such fees properly are included in determining amount-in-controversy. They do not seriously dispute Menu Foods' reasonable estimation of attorneys' fees at $13,500 per plaintiff. (*See* Pl. Mem. at 12.) Simply adding these fees to the unequivocal punitive damages claims totals $76,000 per plaintiff – above the jurisdictional threshold. Thus, Plaintiffs' claims satisfy the amount-in-controversy without even considering compensatory damages or the fact that some Plaintiff(s) may seek a higher share of the collective punitive award due to the nature of their particular claims. Again, all the law requires is that the amount sought by <u>one</u> Plaintiff exceed the threshold.

c) Compensatory and consequential damages

Adding compensatory damages to the calculation puts the amount-in-controversy even further above the requirement. In their Request to Exempt,

4. Taking an average of the total punitive damages claimed leads to the lowest possible figure for the Plaintiff who has the highest amount in controversy. Since Plaintiffs' claims are varied, some Plaintiff(s) necessarily seek more than the average amount.

Plaintiffs claim that the probable "jury award, … exclusive of attorney's fees, interest and costs will be in the excess of $150,000." (Ex. C, ¶33.) Once again, applying simple math to these admissions leads one to conclude that, even assuming the damages were evenly distributed among Plaintiffs – the assumption most favorable to Plaintiffs' present motion – the eight Plaintiffs who made this assertion were seeking $18,750 each ($150,000 ÷ 8), and that the two new Plaintiffs had similar claims. This brings the total amount-in-controversy for punitive, compensatory, and consequential damages and attorneys' fees to more than $90,000 per Plaintiff.

Plaintiffs now claim that the "jury award" in Paragraph 33 includes punitive damages. (*See* Pl. Mem. at 10.) This self-serving reinterpretation of representations previously made to the State Court is strained given that Plaintiffs' "more than $500,000" punitive damages assertion is significantly higher than a $150,000 jury award. Nor did Plaintiffs state in the Request to Exempt that punitive damages were encompassed in the jury award.

But the jurisdictional threshold is easily met here even if one were to accept Plaintiffs' strained argument. The Amended Complaint seeks ten categories of compensatory and consequential damages: (1) costs of purchasing the allegedly contaminated pet food and replacement pet food, (2) costs of veterinary care and

treatment, (3) costs of medicines and/or veterinary supplies, (4) costs of post-mortem examinations and/or necropsies, (5) costs of cremation and/or burial of remains, (6) wage loss, (7) costs of psychiatric services, (8) damages relating to the "intrinsic, special or unique value of Plaintiffs' deceased pet dogs or cats," (9) damages "relating to loss of use of [the] pet dogs or cats," and (10) damages "relating to severe emotional distress, interference with Plaintiffs' lives and the quite enjoyment of their realty and personality."  (Ex. B at ¶¶ 3(b), 3(c).)  Given the number and nature of these categories, at least some (if not all) Plaintiffs seek compensatory and consequential damages in excess of $6,000.  Indeed, Plaintiffs assert that the case law supports $6,400 in compensatory damages for the loss of one dog.  (*See* Pl. Mem. at 10 (*Greenup v. Weaver*, No. CV 04-120778 (Clackamas Co. Ore. Cir. Ct.))).  Plaintiffs' attorney, Emily Gardner, also advertises on her website that verdicts for loss of a pet, not including punitive damages, range from $15,000 to $39,000.  (Ex. D, *see* www.animallawhawaii.com/usa.march15.html.)  Simply adding $6,000 to the punitive damages claim and the lower estimation of the attorneys' fees results in the amount-in-controversy above the $75,000 threshold.

d) Computation of amount-in-controversy

In sum, Plaintiffs' claims for damages include the following:

| Damage Category | Computation | Amount of Damages Sought Per Plaintiff[5] |
|---|---|---|
| Punitive Damages | 500,000 ÷ 8 | $62,500 |
| Attorneys' Fees | $6,750[5] to $13,500 | $6,750 to $13,500 |
| Compensatory Damages | At least $15,000 based on Gardner's website <or> $150,000 ÷ 8 | $15,000 to $18,750 |
| | | |
| **TOTAL** | | **$84,250 to $94,750** |

It is, therefore, a legal certainty that the amount-in-controversy in this action satisfies the federal jurisdictional amount of $75,000.

**C. The Notice of Removal Was Not Procedurally Defective.**

Plaintiffs argue that the Notice of Removal is procedurally defective, claiming that (1) Menu Foods, Inc., had not yet been served at the time of removal, and, therefore, improperly joined in the Notice, and (2) Menu Foods Income Fund had been served at the time of removal and, therefore, improperly failed to join in the Notice. (*See* Pl. Mem. at 13.) Both claims are factually inconsistent with Plaintiffs' prior statements. And even if they were correct, they would not render the Notice procedurally defective.

5. In their motion to remand, Plaintiffs admit that reasonable attorneys' fees are between $6,750 and $13,500. (See Pl. Mem. at 12.)

Days before Menu Foods, Inc., joined in the Notice of Removal filed on July 27, 2007, Plaintiffs' counsel filed a Declaration of Service in State Court, which was signed under the penalty of perjury and asserted that Menu Foods, Inc., was served on July 13, 2007.  It was not until August 21, 2007, that Plaintiffs' counsel submitted another Declaration of Service asserting that Menu Foods, Inc., was not served until August 1, 2007.  Menu Foods, Inc., appreciates that Plaintiffs' counsel's confusion may have led her to submit an inaccurate Declaration, but Plaintiffs should not be permitted to use their mistake to gain some litigation advantage.  In any event, Menu Foods, Inc., is permitted to join in the Notice of Removal and its election to do so does not render the Notice defective.  *See* 28 U.S.C. § 1446, generally.

In addition, Plaintiffs' purported service of the Amended Complaint upon Menu Foods Income Fund in July 2007 was ineffective, as demonstrated in Menu Foods Income Fund's Motion to Quash.  (Ex. D.)  Because Menu Foods Income Fund was not served properly, it was not obligated to join in the notice of removal. *Maui Pineapple Co., Ltd. v. E.A. Bonelli & Associates, Inc.*, Civil No. 06-00655, 2007 WL 1732562 at *5 (D. Haw. June 14, 2007); *Pressman v. Meridian Mortgage Co., Inc.*, 334 F.Supp.2d 1236, 1240-41 (D. Haw. 2004).  Moreover, even if one looks to Plaintiffs' attempted service of the Amended Complaint upon Menu Foods Income Fund in July, the Motion to Quash tolled the time in which

Menu Foods Income Fund may have otherwise been obligated to file or join in a Notice of Removal. *Phoenix Container v. Sokoloff*, 83 F.Supp.2d 928, 931 (N.D. Ill. 2000) (holding that thirty-day time period to remove does not run pending adjudication of a motion to quash service of process).

Accordingly, the Notice of Removal is not procedurally defective.

## IV. CONCLUSION

This action was properly removed to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. §§ 1332 and 1441 and this Court should either (a) deny Plaintiffs' motion to remand, or (b) defer ruling pending the JPML's determination of transfer of this action to the MDL.

DATED: Honolulu, Hawaii, September 13, 2007.

/s/ Chad P. Love
CHAD P. LOVE
BARBARA J. KIRSCHENBAUM

Attorneys for Defendants Menu Foods, Inc., Menu Foods Holdings, Inc., and Menu Foods Income Fund