Sylvester et al v. Menu Foods, Inc. et al | Doc. 28 Att. 4
Case 1:07-cv-00409-ACK-KSC   Document 28-5   Filed 09/13/2007   Page 1 of 3
animallawhawaii.com/usa.march15

# Emily A. Gardner, Attorney

Emily A. Gardner, Attorney
Dillingham Transportation Building, Suite 402, 735 Bishop Street, Honolulu, HI 96813
Phone: (808) 540-0200  Fax: (808) 540-0201
E-mail: eagardner@hawaii.rr.com
www.animallawhawaii.com

**An Attorney Devoted to Animal Law**
:: What is Animal Law?
:: When Should You Call an Animal Law Attorney?
:: Why Should You Call Attorney Emily A. Gardner?
:: Additional Information
:: Estate Planning for Pets

**Environmental Consulting Services**
:: Services Offered
:: Examples of Work

**In the News**
:: New Breed of Lawyer Gives Every Dog his Day in Court
:: Hawaii's New Pet Trust Law
:: Ilio Magazine columns by Emily Gardner
:: Grieving owners call lawyers
:: Woof Woof Your Honor
:: Dog Bite Statistics

**Contact Emily Gardner**
Dillingham Transportation Building
735 Bishop Street, Suite 402
Honolulu, HI 96813
Tel: (808) 540-0200
Fax: (808) 540-0201
E-mail: eagardner@hawaii.rr.com

## When pets die at the vet, grieving owners call lawyers



By Laura Parker, *USA TODAY*, March 15, 2005

The patient had dental surgery, there were complications, and he died. Now his family members are accusing the doctor of negligence and claiming that the episode caused them emotional distress.

It's a typical medical malpractice case -- except in this 3-year-old dispute, the patient was a sheepdog named Lucky.

Barry Silver, the attorney for Lucky's owners, says that when the case goes to trial this year in Broward County, Fla., he intends to ask jurors to award hundreds of thousands of dollars to the dog's owners, Adam Riff and his mother, Ellen.

If Silver is successful, Lucky's case would join a series of recent court decisions that essentially have treated animals as human under the law. In a reflection of the special place that pets have come to hold in Americans' hearts, U.S. courts are bucking centuries of legal decisions that have defined animals as property.

In recent years, courts in New York, Maryland and Texas have resolved custody disputes involving pets by deciding what's best for the pet. Judges in 25 states have administered financial trusts set up in pets' names.

And as Lucky's case indicates, there has been another turn in animal law: Courts have begun to take claims of veterinary malpractice seriously.

Since 1997, courts in Kentucky and California have awarded damages to pet owners for loss of companionship, emotional distress and other factors that go beyond the way courts have long assessed animals' worth: by their market value.

That's the standard the Riffs are challenging in their lawsuit against the Welleby Veterinary Center in Broward County.

"I loved Lucky like he was my son, my little boy," says Adam Riff, 26, an Internet marketing salesman.

EXHIBIT D

animallawhawaii.com/usa.march15
Case 1:07-cv-00409-ACK-KSC    Document 28-5    Filed 09/13/2007    Page 2 of 4
Page 2 of 3

So for Riff, it was painful to hear an opposing lawyer's argument to a judge, during an unsuccessful attempt to get the lawsuit dismissed, that Lucky "had depreciated" in the eight years after Riff had bought him for $300.

"Like a car," Riff says.

Veterinary malpractice cases have not involved the staggering sums that can be associated with claims against doctors who treat humans.

The largest judgment in favor of a pet owner has been $39,000, which a jury in Orange County, Calif., awarded last year to Marc Bluestone.

His mutt, Shane, died of liver failure after a misdiagnosis. In a verdict that is being appealed by the vet, the jury awarded Bluestone $30,000 for the dog's "unique value" to his owner, and $9,000 for vet bills.

**Treating pets like humans**

Critics of such judgments sound much like those who warn that multimillion-dollar medical malpractice verdicts for human patients are driving up the cost of health care.

Richard Cupp, a Pepperdine University law professor, says that if courts routinely start to award emotional damages to pet owners, veterinary care will cost more, leading to "more suffering" among pets because "fewer pets will get sent to the vet."

He also fears the movement to treat pets more like humans under the law could lead to an avalanche of far-fetched animal rights lawsuits, such as claims on behalf of beef cattle headed for slaughter or monkeys used in medical research.

The emergence of veterinary malpractice lawsuits is driven not just by Americans' deep emotional bonds with their pets but also by advances in veterinary medicine that have raised expectations that pets will live longer.

The USA's 64 million pet owners now spend more than $18 billion a year on pet health care, according to the American Veterinary Medical Association, which says that the owner of a typical American dog will spend $11,500 on the animal during its lifetime -- half of it on medical care. Pet hospitals now have specialists such as cardiologists, neurologists and oncologists.

Steve Wise, a Boston lawyer who has taught animal law at Harvard Law School, notes that veterinarians who help to foster the attachment between owner and pet also benefit financially from it.

"For a vet to charge $1,000 to do a procedure on a dog who has a market value of $10, the only reason anyone would consider paying it is, they don't care what the market value is," Wise says.

Duane Flemming, a veterinarian, lawyer and past president of the American Veterinary Medical Law Association, says vets who promote the emotional bond between owner and pet are hard-pressed to go to court and claim the animal had little value.

"It's a hypocrisy to say, 'Spend more money on animals because they are worth more,' and then not be willing to award more when there's a loss," he says.

Flemming, who practices in Concord, Calif., is an ophthalmologist who says he once performed eye surgery on a one-legged duck.

"You used to go to the vet and get a bill for $20," he says. "Now you go ... and you've got an $18,000 bill. If your dog died, the only possible explanation is that someone did something wrong."

In Houston, Fritz the (late) Persian cat was a patient at an animal hospital that has so many specialists it has an entire wing for aviary care.

"They run out with a gurney and put the animal on" it, says Jeffrey Dorrell, a Houston lawyer who is suing Gulf Coast Veterinary Internists on Fritz's behalf. "It's almost theater. They deliberately raise expectations with the magnificence of their facility."

Fritz was diagnosed with pancreatitis and a cancerous mass in late 2002, the lawsuit says. Gulf Coast vets wanted to treat the pancreatitis first. Two months and many procedures later -- including a failed effort to help Fritz gain weight -- the tab topped $7,800, the lawsuit says. Then Fritz's owner, Jennifer Beegle, was told to take him home to die.

**'Nothing to do' with fee**

"The case has nothing to do with what they charged us, although my father is a retired physician, and

EXHIBIT D

I will tell you, you pay more to have an MRI done for your animal than what would be charged at the very finest hospital for a human being," she says.

Beegle is seeking a refund of her vet fees. At Gulf Coast, she says, "I saw grown men sobbing and pulling out three and four credit cards. Luckily, my parents had a $50,000 limit on their card. That was the first thing I was asked: What was the limit on my credit card?"

But Beegle, 36, says she would have paid more to save Fritz. She also says she wishes someone would have told her upfront that Fritz should have been put to sleep. "If he was not able to be saved, I never would have put him through this," she says. "I am suing them because he suffered. He had feelings. They will not profit off my cat's pain."

Gulf Coast's attorney, David Knight, says his clients dispute nearly all of Beegle's allegations. He says the conversation about the credit card limit never occurred.

Knight also says the vets who treated Fritz gave "appropriate care under the circumstances, consistent with the appropriate standards of care."

Dorrell, who plans to begin taking depositions this month, says he expects the case to be just as complex as a human malpractice case.

There are other parallels between veterinary malpractice and malpractice cases involving human patients.

Like doctors who treat people, vets express concern that lawsuits will drive up the cost of their malpractice insurance. So far, though, the price of vets' insurance has been stable for a decade, usually at less than $200 a month.

The parallels have not been lost on Dan Bachi, the lawyer representing vets Jeffrey Sands and John Willie in the Florida case involving Lucky the sheepdog.

"If society is at a point where we need to limit damages to people, should we as a society be awarding money for the loss of pets?" Bachi asks.

"And where do you draw the line? Is it dogs, cats? Is it horses? Is it frogs? Is it my pet snake?"

**Other big cases**

Courts have seriously considered veterinary malpractice cases only in the past few years. Besides the $39,000 judgment awarded to Bluestone in Orange County, two decisions stand out:
- In 1997, a Kentucky jury awarded $15,000 to the owner of a German shepherd, Sheba, who bled to death after surgery. The jury was instructed that the dog could have an intrinsic value beyond its market value, much like an heirloom.
- In 2000, a judge in Costa Mesa, Calif., awarded almost $28,000 in general and other damages to a woman whose Rottweiler, Lonnie, had to have its teeth capped after a bungled dental surgery.

Bluestone may hold the record for an award in a vet malpractice case, but he has spent more than $350,000 taking it to court.

"Any sane attorney would not take veterinary malpractice cases," Silver says. "You spend a long time and a lot of money, and you get nothing back." He says he supports animal rights and takes such cases in order to represent "those who can't speak for themselves."

Bachi says the case is "a significant endeavor financially and emotionally" for the vets.

So why don't the warring parties in Lucky's case find a way to settle?

"These doctors worked hard to save this animal," Bachi says. "They feel victimized by this. They feel falsely accused."

The vets want a jury to decide whether their work fell below accepted standards of care. They say Lucky died from a pre-existing condition that went undiagnosed.

Adam Riff says he has spent $10,000 on the case. His lawsuit alleges that Willie was "defensive and indignant" when the Riffs asked him what went wrong with the anesthesia. Riff says that rather than continue to treat Lucky -- who was in an oxygen tent after the dental surgery — Willie sent the Riffs and Lucky to an animal emergency center because it was closing time at Welleby, "and the next day was (Willie's) day off."

Riff says that "if he had just told us what happened and said, 'I'm sorry, forgive me, it was an accident,' we wouldn't be doing this."

Return to When Should You Call an Animal Attorney?



EXHIBIT D
9/13/07