Emily A. Gardner    #6891
Attorney at Law, LLLC
735 Bishop Street, Suite 402
Honolulu, HI 96813
Tel: (808) 540-0200
Fax: (808) 540-0201

Attorney for Plaintiffs
Valerie Sylvester, et al

IN THE UNITED STATES DISTRICT COURT CIRCUIT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MENU FOODS, INC., a New Jersey Corporation; MENU FOODS HOLDINGS, INC., a Delaware Corporation, MENU FOODS INCOME FUND, an unicorporated Canadian business; Doe Entities and Individuals 1- 100,<br><br>　　　　　　　Defendants. | Civil No. CV07-00409ACKKSC<br>(Non-Vehicle Tort)<br><br>PLAINTIFFS' REPLY IN RESPONSE TO DEFENDANTS MENU FOODS, INC., MENU FOODS HOLDINGS, INC. AND MENU FOODS INCOME FUND'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND; DELARATION OF EMILY A. GARDNER; DECLARATION OF VALERIE SYLVESTER; DECLARATION OF DAVID PANG; DECLARATION OF ANDREW GARCIA; DECLARATION OF RUTH CAMARGO; DECLARATION OF CHRIS HUBBARD; DECLARATION OF STACEY COLLINS; DECLARATION OF RANDALL BANDMANN; DECLARATION OF KELLY ENGLE; DECLARATION OF PAM GOULD; DECLARATION OF ERIK CORAL-SANDS; EXHIBITS "1" AND "2"; CERTIFICATE OF SERVICE |

**PLAINTIFFS' REPLY IN RESPONSE TO DEFENDANT MENU FOODS, INC, MENU FOODS HOLDINGS, INC AND MENU FOODS INCOME FUND'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

I. **Introduction**

A synopsis of the case and the procedural history have been described in previous papers filed with the court, rendering their review here unnecessary.

In their Opposition, Defendants make the following three assertions:

1) That the court should defer ruling on Plaintiffs' Motion to Remand pending a determination of transfer of this case to the MDL;

2) That should the court reach the merits of Plaintiffs' Motion to Remand, it should conclude that federal jurisdiction is "appropriate"; and

3) That Defendants' Notice of Removal was not procedurally defective.

See Defendants' Opposition at 4, 7 and 13, respectively. Plaintiffs address each of Defendants' three contentions below, and in doing so, clearly demonstrate that Plaintiffs' Motion for Remand should be granted.

II. **Argument**

A. **Despite a Request to Transfer a Case to an MDL, the District Court Remains Empowered to Decide Remand Motions Pending Before it**

In Defendants' Opposition, at 5, Defendants make the claim that "this case was conditionally transferred to the MDL on August 20, 2007." This is simply not true.

On August 20, 2007, the clerk of the Judicial Panel on Multidistrict Litigation ("JPML") served a conditional transfer order (CTO-4) on all parties to the action,

2

conditionally ordering transfer of the case as a potential "tag-along action[1]" to the District Court of New Jersey pursuant to the Rules of Procedure of the Judicial Panel for Multidistrict Litigation.

Under Rule 7.4, Conditional Transfer Orders for Tag-Along Actions, sub-section (c) of the Rule provides:

> Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, <u>the Clerk of the Panel shall not transmit said order to the clerk of the transferee district until further order of the panel</u>.

Plaintiffs field their Notice of Opposition to CTO-4 with the Clerk of the Panel within the fifteen-day period, on August 31, 2007. <u>See</u> Exhibit "1" attached hereto. As such, the order transferring the matter has not been filed, and transfer to the MDL has not been effected. See also Rule 7.4 (e) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation: **Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court**. (Emphasis added).

In addition, Plaintiffs have also filed a Motion to Vacate CTO-4 and a brief in support thereof. See Exhibit "2," attached hereto. Thus, transfer of this case to the MDL as a potential "tag-along" action cannot be accomplished until after a hearing on the Plaintiffs' Motion to Vacate the transfer order. The U.S. District Court for the District of Hawaii retains full jurisdiction of the matter "unless and until" the conditional transfer order has been filed with the clerk of the Hawaii District Court, and has full authority to rule on all pre-trial issues pending before it, including Plaintiffs' Motion to Remand.

---

[1] Under Rule 1.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, a "tag-along" action is defined as "a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407.

3

The conclusion that the Hawaii District Court retains jurisdiction to rule on Plaintiffs' Motion to Remand is strongly supported by Rule 1.5 of the Rule of Procedure for the JPML:

> <u>The pendency of a</u> motion, order to show cause, <u>conditional transfer order</u> or conditional remand order before the Panel considering transfer or remand of an action pursuant to 28 U.S.C. § 1407 <u>does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court</u>. A transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee district.

Thus, this court is firmly vested with authority to rule on Plaintiffs' Motion to Remand and need not defer making its ruling until after a decision on transfer to the MDL has been finalized. To do so would subject Plaintiffs to unnecessary delay in reaching the merits of the case.

Case law supports this court's determination of Plaintiff's Motion to Remand based on Plaintiffs' filing of a Notice of Opposition to CTO-4 thereby effecting a stay of transfer to the MDL. When a notice of opposition to a conditional transfer order is filed, the district court "retains jurisdiction to decide a pending motion to remand." <u>Fu's Garden Restaurant v. Archer-Daniels-Midland Company</u>, 2000 WL 635440, n.1 (N.D. Cal. 2000); <u>Faulk v. Owens-Corning Fiberglass Corp.</u>, 48 F. Supp. 2d 653, 657 n.2 (E.D. Texas Beaumont Division 1999).

### B. A Decision on Plaintiffs' Motion to Remand by the MDL Would Not Promote Judicial Economy

In <u>Strong v. Merck & Company, Inc.</u>, 2005 U.S. Dist. LEXIS 2413 (N.D. Cal. 2005), the court derives the proper standard for determining whether to stay a Plaintiffs' Motion to Remand while its motion to transfer is pending before the MDL Panel. In doing so, the court notes that "the decision as to whether to reach the merits of plaintiff's

4

motion is left to the court's discretion. See e.g., Good v. Prudential Ins. Co. of Am., 5 F.Supp. 2d 804, 806, 809 (N.D. Cal. 1998)."

The Strong court determines that the court *must* consider whether it should exercise its inherent power to stay proceedings in the interest of judicial economy. *Id.*, at 6. In doing so, the court recognizes that:

> [T]here are many cases in which a motion to remand will raise questions of fact or law that would not otherwise arise in the proceedings before the MDL court. See e.g., Greene v. Wyeth, 344 F. Supp. 2d 674, 678-79 (D. Nev. 2004); In re Massachusetts Diet Drug Litigation, 338 F. Supp. 2d 198, 201 (D. Mass 2004) Conroy [v. Fresh Del Monte Produce, Inc.,]. Supp. 2d 1049, 1053 (N.D. Cal. 2004). **In such cases, the interest of judicial economy is best served by denying the motion to stay and adjudicating the motion to remand in the court in which the action is pending**.

*Id.* at 7.[2] In denying the Defendant's motion for a stay, the Strong, the court found that:

> In moving to remand, plaintiff's sole argument relies on the complaint's failure to satisfy the amount in controversy requirement of 28 U.S.C. § 1332. That inquiry focuses on the nature of the loss suffered by the individual plaintiff in this action and whether California law entitles her to recover damages exceeding the jurisdictional threshold. Nothing about these issues involves questions of law or fact that one would expect to arise in other Vioxx-related cases. Accordingly, the court sees no advantage in burdening an as yet to be determined transferee court with the task of ruling on plaintiff's remand motion.

In the instant Motion to Remand, Plaintiffs challenge federal jurisdiction based on the facts that: 1) in their Complaint, Plaintiffs specifically averred that the amount in controversy for each individual Plaintiff was believed to be less than $75,000, and. 2) that Defendants' Notice of Removal was procedurally defective. These are <u>two very simple and specific factual issues</u> affecting the court's jurisdiction in this particular case and, are

---

[2] In all of the Strong court's referenced cases, the courts declined to enter a stay and elected to reach the merits of the plaintiffs' motions to remand.

5

not likely to be addressed in any other cases consolidated before the Panel.[3] Based on the law, as applied in Strong, Defendants' request to stay a decision should be denied and this court should decide Plaintiffs' motion on the merits.

The cases cited by Defendants in support of their position that the MDL should decide this Motion almost all involve common legal issues affecting several of the cases before it.[4]

In addition, Defendants' claim that "the general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation…" mis-states the finding by the Tennessee District Court in Jackson v. Johnson & Johnson, Inc. 2001 U.S. District LEXIS 22329, No. 01-2113 DA.  In Jackson v. Johnson & Johnson, Inc., the court acknowledged that "federal courts routinely defer ruling on pending motions to remand in MDL litigation until after the JPML has transferred a case to the MDL." This indicates that the court *may* defer a ruling on a motion to remand, not that it is "the general rule" for courts to do so.

Because Plaintiffs' instant Motion addresses two very specific, non-complex factual issues that are unique to this case and unlikely to arise in others, Defendants'

---

[3] The great majority of cases before the MDL are very large class action suits that were initiated in federal court.

[4] See Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp.2d 1049, 1053 (N.D. Cal. 2004), finding that a stay and deference to the MDL transferee court is particularly appropriate where the parties contest issues likely to arise in other actions pending in the consolidated proceedings (Defendant's request for stay denied); Bd. Of Trs. Of Teachers' Ret. Sys of Ill. V. Worldcom, Inc., 244 F.Supp.2d 900, 905 (N.D. Ill 2002) (having one court rather than three decide complex jurisdictional issues obviously saves judicial resources.); and, Wienke v. Microsoft Corp., 84 F.Supp.2d 989, 900 (E.D. Wis. 2000) (a stay would serve the interests of judicial economy and avoid inconsistent results in multiple venues.) It is doubtful that any other cases before the MDL involve a complaint made by ten individual plaintiffs who claim in their Complaint that the amount in controversy of no named Plaintiff exceeds $75,000, and that Defendants Notice of Removal was procedurally defective because they failed to join the proper Defendants. These are very simple, fact specific issues unique to this case.

6

arguments that a decision on Plaintiff's Motion to Remand would be better decided by the JPML because it would promote judicial economy are not at all persuasive.

Forcing the JPML to decide a Motion to Remand that is based on specific factual issues relating to ten individual Plaintiffs' stated amounts in controversy stemming from claims made under Hawaii law and their claim that Defendants' Notice of Removal is procedurally defective would seem to actually frustrate one of the core purpose of the Panel, conservation of resources, as it will force the Panel to devote its time to resolving very specific factual issues—not legal issues-- that are not complex in nature.

In this case, judicial economy would not best be served by having the District of New Jersey decide the issue of federal jurisdiction raised by Plaintiffs' Motion. The court should reach the merits of Plaintiffs' Motion to Remand.

### C. Defendants' Fail to Meet the Burden of Proof Required to Establish Federal Jurisdiction

The Ninth Circuit has consistently determined that 28 U.S.C.S. § 1441 is to be strictly construed against removal, with any doubts regarding the propriety of removal resolved in favor of remanding the case to state court. See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006); Gaus v. Miles, Inc. 980 F.2d 564, 566 (9th Cir. 1992); Palace Reit v. Englested, 126 Fed. Appx. 425, 2005 U.S. App. LEXIS 6658 (9th Cir. 2005). Because of the strong presumption against removal, Defendants' burden of proof needed to establish that the amount in controversy exceeds the jurisdictional threshold is a heavy one.

In their Opposition, Defendants simply argue that "if the court reaches the merits of Plaintiffs' motion, it should conclude that federal jurisdiction is 'appropriate'", while providing no applicable legal standard on which the court is to base its decision.

Defendants only state in a footnote that "Plaintiffs' application of <u>Lowdermilk v. United States Bank National Association</u>, 479 F.3d 994 (9th Cir. 2007) is far too narrow for the present circumstances." See Defendants' Opposition, at 7-8, fn 3. Yet, it was Defendants in their Notice of Removal who first (and correctly) cited <u>Lowdermilk</u> as the proper rule of law for establishing the burden of proof required to establish an amount in controversy in excess of the jurisdictional threshold.

Why <u>Lowdermilk</u> is applicable to present case is because it set the standard for establishing the burden of proof in instances where—as here--Plaintiffs have in good faith averred damages below the threshold for federal jurisdiction. The Lowdermilk court articulated the rule of law to be applied to instances where plaintiffs have disclaimed damages in excess of the jurisdictional threshold-- that it that defendants must prove to a "legal certainty" that the jurisdictional threshold has been met. Defendants cited this very proposition in their Notice of Removal at 10, "Menu Foods must establish 'with legal certainty' that the amount in controversy is satisfied." (Emphasis added.)

Moreover, in recognition of the well-established rule that "the plaintiff is the master of her complaint," the Lowdermilk court ruled that Plaintiffs can plead less then the jurisdictional minimum to avoid federal jurisdiction:

> Subject to a good faith requirement in pleading, a plaintiff may sue for less than the that amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. <u>Where plaintiff has alleged her facts and pled her damages and there is no evidence of bad faith, Defendant must not only contradict the plaintiff's assessment of damages but must overcome the presumption against federal jurisdiction.</u>

*Id.* at 998-999.

Notably, in their Complaint and First Amended Complaint, Plaintiffs pled that the amount in controversy for each individual Plaintiff was believed to be less than the jurisdictional threshold of $75,000. This averment made in the Plaintiffs' complaint is directly supported by the facts provided by Plaintiffs and the statements made in Plaintiffs' individual declarations. See, Declarations of Valerie Sylvester, David Pang, Andrew Garcia, Ruth Camargo, Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly Engle, Pam Gould and Erik Coral-Sands, attached hereto. Thus, because Plaintiffs expressly averred an amount an controversy, which is supported by additional evidence, Defendants must prove that the amount in controversy for at least one plaintiff exceeds $75,000 to a "legal certainty," and in doing so overcome the strong presumption against federal jurisdiction. Defendants simply have not upheld this burden.

As their only forms of evidence in support of their argument that "the court should conclude that federal jurisdiction is appropriate," Defendants provide Plaintiffs' Request to Exempt the Case from the Court Annexed Arbitration Program and a general article that appears on Plaintiffs' counsel's website that appeared on March 15, 2005 in *USA Today* about veterinary malpractice cases, "When pets die at vet, grieving owners call lawyers." Neither of these forms of evidence meets the standard of specificity required to overcome the presumption against federal jurisdiction for this particular case as provided in Lowdermilk. Similarly, neither of these forms of evidence provides a compelling argument in favor of the proposition that the amount in controversy for at least one Plaintiff in this case exceeds $75,000.

Defendants argue that Plaintiffs have reinterpreted the phrase "jury award" in a "self-serving manner" that includes punitive damages. See Defendants' Opposition at 11. This is incorrect. Defendants, by claiming that the phrase "jury award" does not include punitive damages, and is restricted only to general and specific damages would seem to be the ones engaging in a creative reinterpretation of the term to suit their needs. The article appearing in *USA Today* where all types of damages are considered in a "jury verdict" supports this finding, as do the cases previously cited by Plaintiffs. (E.g., Propes v. Griffith, 25 S.W. 3d 544 (Mo. App. W.D. 2000), Greenup v. Weaver[5], No. CV 04-120778 (Calackamas Co. Ore. Cir Ct.))

Defendants' almost complete reliance on Plaintiffs' Request to Exempt, filed in the First Circuit Court of the State of Hawaii on May 11, 2007, is not at all compelling because, not only did Defendants mis-interpret statements made by Plaintiffs' counsel in the document, but more importantly, they rely on very general, aggregated amounts in controversy provided for all Plaintiffs collectively and attempt to divide it by the number of Plaintiffs at the time the original complaint was filed. This is not a reliable indicator of the amount in controversy for any one Plaintiff to satisfy the standard for establishing federal jurisdiction at the time Defendants filed their Notice of Removal on July 27, 2007, after additional plaintiffs had been added, nor at any other time.

Moreover, even if Defendants are permitted to engage in this exercise, as shown by Plaintiffs' Motion to Remand at 11-12, Defendants fail to prove to a "legal certainty," the standard required by Lowdermilk that the amount in controversy for at least one plaintiff exceeds $75,000.

---

[5] Greenup v. Weaver, *supra*, has been heralded as the largest jury award ($56,400) for the reckless destruction of a single companion animal. See

Significantly, Defendants do not even attempt to state an amount in controversy for any one particular plaintiff. As noted by the Ninth Circuit Court of Appeals in <u>Palace Reit</u>, *supra*, at 426, "because the removing defendants have failed to demonstrate any amount in controversy, they have not properly invoked federal jurisdiction."

The Ninth Circuit has also held that in instances, where as here, Plaintiffs have challenged Defendants' allegations of jurisdictional facts (based on the amount in controversy), defendants must support allegations of jurisdictional facts by "competent proof" in order to overcome the presumption against federal jurisdiction. <u>Gaus</u>, *supra* at 567. See also <u>Famous Amos Chocolate Chip Cookies v. Radack</u> 1993 U.S. Dist. LEXIS 7923 (D. Cal., June 11, 1993 Decided).

Similar to defendants in <u>Gaus</u>, all Defendants in the instant case have done is to "recite some magical incantation" that the amount in controversy of at least one plaintiff exceeds $75,000 and that "federal jurisdiction is appropriate." In making these claims, Defendants rely solely on their interpretation of statements made in Plaintiffs' Request to Exempt and a general newspaper article about veterinary malpractice cases. Thus, as the court properly concluded in <u>Gaus</u>, Defendants in the instant action have failed to meet the burden of proof required to establish the amount in controversy by "competent proof," and have failed to overcome the strong presumption against federal jurisdiction.

In the case at hand, Plaintiffs expressly claimed in their complaint that the amount in controversy for each plaintiff did not exceed $75,000, and did so on a good faith assessment of available damages known to them at the time of filing. Plainitffs' claim is further supported by their declarations submitted. Because plaintiffs pled an amount in controversy below the jurisdictional threshold, Defendants were required to prove to a

"legal certainty" that the amount of controversy for at least one plaintiff does exceed $75,000. By relying solely on their interpretation of statements made by Plaintiffs' counsel in her Request to Exempt and a general newspaper article that appeared in *USA Today*, Defendants failed to meet the burden of proof required to overcome the strong presumption against federal jurisdiction articulated by the court in Lowdermilk.. The same arguments can be made based on the fact that Plaintiffs strongly contested Defendants' allegations of jurisdiction, requiring Defendants to submit "competent proof" that the jurisdictional threshold for at least one plaintiff had been exceeded. Again, Defendants failed to provide competent proof that the amount in controversy for any of the plaintiffs, actually exceeds $75,000. Because Defendants failed to meet their burden of proof required by law, Plaintiffs' Motion to Remand should be granted.

### D. Defendants' Notice of Removal Is Procedurally Defective

The strong presumption against federal jurisdiction extends not only to demonstrating a jurisdictional basis of removal, but also necessary compliance with the requirements of the removal statute. Albonetti v. GAF Corporation Chemical Group, 520 F.Supp. 825, 827 (S.D. Tex. 1981). Any ambiguities relating to compliance with the removal statute are to be construed against removal.

Defendants filed their Notice of Removal in this court on July 27, 2007. Defendants Menu Foods Holdings, Inc. and Menu Foods, Inc. joined in the Notice of Removal.

At the time Defendants filed their Notice of Removal, however, only Defendants Menu Foods Holdings and Menu Foods Income Fund had been served. While it is true that Defendants challenged Plaintiffs' service of Menu Foods Income Fund by filing a

Motion to Quash, or Alternatively to Dismiss the Action with regard to Menu Foods Income Fund, Defendants did so on August 3, 2007, *after* filing their Notice of Removal with the court. Thus, a Motion to Quash was not pending at the time Defendant's filed their Notice of Removal[6], and should not be considered when determining whether Defendants properly complied with the removal statute at the time of filing.

In addition, while it is also true that under the removal statute, Defendants may join a notice of removal within 30 days after they have been served, the issue regarding the defect in Defendants' Notice of Removal was that Defendants improperly joined Menu Foods Inc. on their Notice filed with the court on July 27, 2007, before Menu Foods, Inc. was served on August 1, 2007. As the court notes in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 143 L.Ed. 448, 119 S.Ct. 1332 (1999), "in the absence of service of process, a court ordinarily may not exercise power over a party the complaint names as a defendant." Thus, at the time Defendants filed their Notice of Removal, the court had no jurisdiction over Defendant Menu Foods, Inc., rendering Defendants' Notice defective. Defendants never sought to cure the obvious defect in their Notice after learning of the proper order of service of process a few days later on or about July 31, 2007.

Plaintiffs are not attempting to use their mistake to gain an advantage in this litigation. Plaintiffs are not required by law or any rule of the court to serve Defendants

---

[6] Moreover, Plaintiffs strongly contend that Defendants' Motion to Quash was clearly lacking in merit and was filed for an improper purpose, specifically to obtain an extension of time to answer Plaintiffs' complaint if Defendant Menu Foods Income Fund's Ex Parte Motion for an Extension of Time to Answer was not granted. See Plaintiffs' Memorandum in Opposition to Defendants' Motion to Quash, or Alternatively to Dismiss, filed with this court on August 21, 2007, and the exhibits attached thereto. Plaintiffs will leave the court to draw its own conclusions regarding the disingenuous nature of Defendants' Motion, but simply state that in line with Defendants' claims made in their Motion to Quash, Defendants' claims in their Opposition regarding Plaintiffs' "attempted" service of the Amended Complaint, " are equally suspect, particularly after agreeing to stipulate to the fact that service of Menu Foods Income Fund on July 13, 2007 was proper.

with proof of service documents. Defendants obtained them on their own from the Hawaii Circuit Court, and had ample opportunity to note that Menu Foods Income Fund had been served, had they examined the affidavit provided by the process server. Again, Defendants never sought to cure the defects in their Notice by joining the proper Defendants at the proper time required by law in Murphy Brothers, *supra*. As such Defendants' Notice of Removal is procedurally defective.

### IV.  Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that the court deny Defendants' request to defer ruling on Plaintiffs' Motion to Remand pending a transfer decision by the MDL, and that it grant Plaintiffs' Motion based on the facts that Defendants failed to carry their burden of proof required to establish that an amount in controversy of one or more Plaintiffs in excess of $75,000 and because there were defects in Defendants' Notice at the time of filing which they did not seek to cure.

DATED: Honolulu, Hawaii, September 20, 2007.

/s/ Emily A. Gardner
EMILY A. GARDNER,
Attorney for Plaintiffs Valerie Sylvester, *et al*.