IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VALERIE SYLVESTER; DAVID PANG; ANDREW GARCIA; RUTH CAMARGO; CHRIS HUBBARD; STACEY COLLINS; RANDALL BANDMANN; KELLY ENGLE; PAM GOULD; ERIK CORAL-SANDS, | ) CIVIL NO. 07-00409 ACK-KSC<br>)<br>) FINDINGS AND<br>) RECOMMENDATION TO GRANT<br>) PLAINTIFFS' MOTION TO<br>) REMAND AND ORDER DENYING<br>) AS MOOT DEFENDANTS' MOTION |
| Plaintiffs, | ) TO STAY ALL PROCEEDINGS<br>) |
| vs. | )<br>) |
| MENU FOODS, INC., a New Jersey corporation' MENU FOODS HOLDINGS, INC., a Delaware corporation; MENU FOODS INCOME FUND, an unincorporated Canadian business; DOE ENTITIES an INDIVIDUALS 1-100, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____ | ) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION
TO REMAND AND ORDER DENYING AS MOOT DEFENDANTS'
MOTION TO STAY ALL PROCEEDINGS

Before the Court is Plaintiffs Valerie

Sylvester, David Pang, Andrew Garcia, Ruth Camargo,

Chris Hubbard, Stacey Collins, Randall Bandmann, Kelly

Engle, Pam Gould, and Erik Coral-Sands' (collectively

"Plaintiffs") Motion to Remand, filed August 27, 2007.

Defendants Menu Foods, Inc. ("MF"), Menu Foods
Holdings, Inc. ("MFH"), and Menu Foods Income Fund
("MFIF") (collectively "Defendants") filed their
Opposition on September 13, 2007.  Plaintiffs filed
their Reply on September 20, 2007.

Also before the Court is Defendants' Motion to
Stay All Proceedings, filed August 2, 2007.  Plaintiffs
filed their Opposition on August 26, 2007, and
Defendants filed their Reply on August 30, 2007.

Both motions came on for hearing on October 1,
2007.[1]  Emily Gardner, Esq., appeared on behalf of
Plaintiffs.  Chad Love, Esq., appeared, and Matthew
Lepore, Esq., appeared pro hac vice on behalf of
Defendants.  After careful consideration of the
motions, supporting and opposing memoranda, and the
arguments of counsel, the Court FINDS and RECOMMENDS
that the district court GRANT Plaintiffs' Motion to

---

[1]   Since the hearing, the parties' have been
working together to reach an agreement regarding
mediation.  At their request, the Court delayed
issuance of the instant Findings and Recommendation and
Order.

Remand and HEREBY DENIES Defendants' Motion to Stay as
moot.

## BACKGROUND

On May 11, 2007, Plaintiffs (8 total) filed a
complaint in the First Circuit Court for the Circuit of
Hawaii.  A First Amended Complaint was filed on June
22, 2007, adding two plaintiffs.  Plaintiffs served MFH
on July 9, 2007, MF on August 1, 2007, and MFIF on
September 10, 2007.[2]  MF and MFH removed the case on
July 27, 2007.

According to Defendants, there are over 100
actions related to their contaminated pet food.  On
June 19, 2007, the Judicial Panel on Multidistrict
Litigation ("JPML") established the MDL In re Pet Food
Products Liability Litigation, in the U.S. District
Court for the District of New Jersey.  Since then, a
number of the pending cases across the country have
been transferred to New Jersey.  On August 20, 2007,

---

[2]  By way of Stipulation, the parties agreed that
the July 13, 2007 service on MFIF is deemed effective
as of September 10, 2007.

the JPML issued a conditional transfer order for the

instant action, to which Plaintiffs object.

DISCUSSION

I.   <u>Stays and Multidistrict Litigation</u>

Defendants request that the Court, in the

interest of judicial economy, either stay all

proceedings or defer a determination of the Motion to

Remand pending a decision by the JPML of whether this

action will be transferred to New Jersey.  Plaintiffs

argue that the jurisdictional issues (i.e. Motion to

Remand) should be addressed before the Motion to Stay.

Because this case is one of many brought

against Defendants, multidistrict litigation is

implicated.  Coordination of multidistrict litigation

is governed by 28 U.S.C. § 1407.  Section 1407(a)

provides, in pertinent part:

> When civil actions involving one or more
> common questions of fact are pending in
> different districts, such actions may be
> transferred to any district for
> coordinated or consolidated pretrial
> proceedings. Such transfers shall be made
> by the judicial panel on multidistrict
> litigation authorized by this section upon

4

> its determination that transfers for such
> proceedings will be for the convenience of
> parties and witnesses and will promote the
> just and efficient conduct of such
> actions. . . .

28 U.S.C. § 1407(a).  The JPML Rules of Procedure

provide that:

> The pendency of a motion, order to show
> cause, conditional transfer order or
> conditional remand order before the Panel
> concerning transfer or remand of an action
> pursuant to 28 U.S.C. § 1407 does not
> affect or suspend orders and pretrial
> proceedings in the district court in which
> the action is pending and does not in any
> way limit the pretrial jurisdiction of
> that court. A transfer or remand pursuant
> to 28 U.S.C. § 1407 shall be effective
> when the transfer or remand order is filed
> in the office of the clerk of the district
> court of the transferee district.

R. Proc. Jud. Panel Multi. Litig. 1.5.  The district

court is therefore not obligated to automatically stay

a case during the pendency of matters before the MDL

Panel.  Instead, it is within the court's discretion to

grant a stay when it is in the interest of judicial

economy and efficiency.  See Rivers v. Walt Disney Co.,

980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

When considering a motion to stay, district

courts consider the following factors: "(1) potential
prejudice to the non-moving party; (2) hardship and
inequity to the moving party if the action is not
stayed; and (3) the judicial resources that would be
saved by avoiding duplicative litigation if the cases
are in fact consolidated." Id. (citing Am. Seafood,
Inc. v. Magnolia Processing, Inc., Civ. A. Nos.
92-1030, 92-1086, 1992 WL 102762, at *1-2 (E.D. Penn.
May 7, 1992)).

II. Order of Determining Motions to Remand and Motions
    to Stay

        In this case, not only is the issue of whether
to grant a stay before this Court, but also the issue
of whether to remand the action to state court.  Courts
have held that when jurisdictional issues are in
dispute, a motion to remand should be resolved prior to
the determination of whether a stay is appropriate.
Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155, 1157
(E.D. Cal. 2002) (citing Good v. Prudential Ins. Co. of
Am., 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (granting
stay pending MDL transfer decision after considering

jurisdictional issues in remand motion); <u>Tortola Rest.,</u>
<u>L.P. v. Kimberly-Clark Corp.</u>, 987 F. Supp. 1186,
1188-89 (N.D. Cal. 1997) (denying stay motion and
addressing merits of motion to remand); <u>Kohl v. Am.</u>
<u>Home Products Corp.</u>, 78 F. Supp. 2d 885, 888 (W.D. Ark.
1999) (granting stay following determination that
removal was proper and denial of remand was warranted);
<u>Aetna U.S. Healthcare, Inc. v. Hoechst</u>
<u>Aktiengesellschaft</u>, 54 F. Supp. 2d 1042, 1047 (D. Kan.
1999) (reasoning that preliminary jurisdictional issue
should be determined on motion to remand before court
considers staying the action)).  "However, the calculus
changes somewhat when deference to a MDL court will
further 'the uniformity, consistency, and
predictability in litigation that underlies the MDL
system.'"  <u>McClelland v. Merck & Co.</u>, CIV. No. 06-00543
JMS/BMK, 2007 WL 178293, *2 (D. Haw. Jan. 19, 2007)
(quoting <u>Leeson v. Merck & Co., Inc.</u>, No. S-05-2240 WBS
PAN, 2006 WL 3230047 (E.D. Ca. Jan. 27, 2006))
(citation omitted).

When considering simultaneous motions to remand
and motions to stay the proceedings, district courts
employ a three-step methodology.  First, "a court
should . . . give preliminary scrutiny to the merits of
the motion to remand.  If this preliminary assessment
suggests that removal was improper, the court should
promptly complete its consideration and remand the case
to state court."  Id. (quoting Meyers v. Bayer AG, 143
F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)); Conroy v.
Fresh Del Monte Produce, Inc., 325 F. Supp. 2d 1049,
1053 (N.D. Cal. 2004).  However, if "the jurisdictional
issue appears factually or legally difficult, the
court's second step should be to determine whether
identical or similar jurisdictional issues have been
raised in other cases that have been or may be
transferred to the MDL proceeding."[3]  Id. (quoting
Meyer, 143 F. Supp. 2d at 1049); Conroy, 325 F. Supp.

---

[3] This is because it is only for the purpose of
furthering judicial economy and consistency that the
transferee court should decide the jurisdictional
issue.  Meyer, 143 F. Supp. 2d at 1049.

2d at 1053.  A court should only proceed to the third
step and consider the motion to stay "if the
jurisdictional issue is both difficult and similar or
identical to those in cases transferred or likely to be
transferred."  Meyer, 143 F. Supp. 2d at 1049;
McClelland, 2007 WL 178293, at *2; Conroy, 325 F. Supp.
2d at 1053.

Here, a preliminary assessment of the motion to
remand, which is not factually or legally difficult,
suggests that removal was improper.[4]  An action should
not be transferred if a court lacks subject matter
jurisdiction.[5]  The Court should therefore address the

———————————

[4]  Even if the remand issue was difficult, it would
not serve judicial economy for the transferee court to
determine the motion to remand because of the 93 cases
currently transferred, only eight involved removal, and
none of those eight present motions to remand.
Moreover, a determination by the transferee court of
multiple motions to remand would be inefficient, as
each case would present varying amounts in controversy
as well as varying numbers of plaintiffs.

[5]  Indeed, 28 U.S.C. § 1404(a) "limits transfer of
a civil action to 'any other district or division where
it might have been brought'. . . [i]n other words,
because a court may only transfer a case to a venue
where the case could have been brought originally,

motion to remand.

    A.   <u>Remand</u>

        Plaintiffs seek remand because 1) Defendants
failed to prove the amount in controversy with "legal
certainty" and 2) the Notice of Removal ("Notice") is
defective.  Plaintiffs note that Defendants rely almost
entirely on Plaintiffs' request to exempt from court
annexed arbitration program to establish the amount in
controversy.

        Defendants counter that they have proven, with
legal certainty, that the amount in controversy for one
plaintiff exceeds $75,000.  Based on Defendants'
calculations of damages and attorneys' fees, the amount
in controversy for at least one plaintiff ranges from
$84,250 to $94,750.  Defendants additionally maintain
that their Notice was not defective because MF could
join in the Notice even if it was not served and MFIF
was not required to join because it had yet to be

---

questions regarding subject matter jurisdiction must be
resolved before any such transfer."  <u>Conroy</u>, 325 F.
Supp. 2d at 1053.

properly served.

MF and MFH removed the instant case pursuant to
28 U.S.C. §§ 1441(b), 1332, and 1446.[6]  Notice of
Removal at 4.   Section 1441 provides, in pertinent
part:

> (a) Except as otherwise expressly provided
> by Act of Congress, any civil action
> brought in a State court of which the
> district courts of the United States have
> original jurisdiction, may be removed by
> the defendant or the defendants, to the
> district court of the United States for
> the district and division embracing the

---

[6]  Section 1446(b) of Title 28 of the U.S. Code
provides, in pertinent part:

> The notice of removal of a civil action or
> proceeding shall be filed within thirty
> days after the receipt by the defendant,
> through service or otherwise, of a copy of
> the initial pleading setting forth the
> claim for relief upon which such action or
> proceeding is based, or within thirty days
> after the service of summons upon the
> defendant if such initial pleading has
> then been filed in court and is not
> required to be served on the defendant,
> whichever period is shorter.

28 U.S.C. § 1446(b).  Plaintiffs served MFH and MF on
July 9, 2007 and August 7, 2007, respectively.  MFH and
MF filed the Notice on July 27, 2007.  Accordingly, the
Court finds that MFH and MF timely filed the Notice.

> place where such action is pending. . . .
>
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. . . .

28 U.S.C. § 1441 (a), (b).  Section 1441 is strictly construed against removal and courts resolve any doubts about the propriety of removal in favor of remanding the case to state court.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006).

As an initial matter, the Court will address Plaintiffs' charge that the Notice is defective due to MF's premature joinder and MFIF's failure to join. Although it appears that MF indeed joined in the removal before service was effected, this does not render the Notice defective.  14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Pocket Part by The Late Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, Federal Practice and Procedure § 3732 ("Removal will not be denied by the

12

federal court simply because the notice of removal is too early . . . ."). As for MFIF, the parties stipulated that service is deemed effective as of September 10, 2007, so MFIF was not required to join in the Notice at the time it was filed. However, to satisfy the unanimity requirement, MFIF must now consent to removal. It is clear that by opposing remand, MFIF joins in the removal. The Court therefore construes the Opposition as MFIF's consent to removal.

1. <u>Diversity of Citizenship</u>

Defendants claim that complete diversity exists because they are incorporated in Delaware and New Jersey, respectively, with principal executive offices located outside of Hawaii;[7] Plaintiffs are citizens of Hawaii; and the amount in controversy respecting at least one Plaintiff exceeds $75,000. Notice of Removal at 11. It is well-established that the "'burden of

---

[7] <u>See</u> 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").

establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.'" <u>Lowdermilk v. U.S. Bank Nat'l Ass'n</u>, 479 F.3d 994, 997 (9th Cir. 2007) (quoting <u>Abrego Abrego v. Dow Chemical Co.</u>, 443 F.3d 676, 685 (9th Cir. 2006)).[8]  The parties do not dispute the existence of diversity and Defendants have established that diversity exists.

    2.  <u>Amount in Controversy; "Legal Certainty" Test</u>

The issue before the Court is whether the amount in controversy exceeds $75,000.  In the Complaint, Plaintiffs represent that "the amount in controversy for each individual Plaintiff is believed to be less than $75,000."  Ex. A to Notice of Removal at ¶ 52.  Where, as here, a plaintiff avers damages below the threshold for federal jurisdiction, a court "need not look beyond the four corners of the complaint

---

    [8]  Although <u>Lowdermilk</u> involves the Class Action Fairness Act, its application is not limited to class actions.  <u>Roe v. Teletech Customer Care Mgmt, LLC</u>, No. C07-5149 RBL, 2007 WL 1655172, *1, *3 n.1 (W.D. Wash. June 6, 2007).

to determine whether the . . . jurisdictional amount is met." Lowdermilk, 479 F.3d at 998.  Given that Plaintiffs specifically disclaim damages in excess of $75,000 per Plaintiff, it is Defendants' burden to prove with legal certainty that the amount in controversy exceeds $75,000.  Id. at 1000.  This is because Plaintiff "is 'master of her complaint' and can plead to avoid federal jurisdiction." Id. at 998-99 (citations omitted).  As explained by the Lowdermilk court:

> subject to a "good faith" requirement in a pleading, a plaintiff may sue for less than that amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court.  Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but most overcome the presumption against federal jurisdiction.

Id. at 999 (citations omitted).

Defendants rely solely on Plaintiffs' request to exempt to establish the amount in controversy. However, the request to exempt does not support

15

Defendants' assertion that they have proved, with legal certainty, that the amount in controversy for at least one Plaintiff exceeds $75,000.  Moreover, each Plaintiff submitted a declaration stating that their damages, including attorneys' fees, do not exceed $75,000.  <u>See</u> Declarations to Pls.' Reply.

      a.  <u>general/special damages</u>

      In the request to exempt, Plaintiffs state that they "believe that the probable jury award, not reduced by the issue of liability, and exclusive of attorney's fees, interests and costs will be in excess of $150,000."  Ex. C to Opp'n at ¶ 33.  Defendants contend that $150,000 divided by the eight Plaintiffs named in the original complaint totals $18,750 per Plaintiff in general/special damages.  This cuts directly against Defendants' assertion that "[t]he damages sought by Plaintiffs, not the damages (if any) they ultimately will recover, determine whether their allegations satisfy the amount-in-controversy required for federal jurisdiction."  Notice of Removal at 5 (citing <u>Lao v.</u>

16

Wickes Furniture Co., 455 F. Supp. 2d 1045, 1049 (C.D. Ca. 2006)); Opp'n at 7-8.  Indeed, Plaintiffs' estimation of the *probable jury award* is not a request for damages, but a prediction of the amount that they might ultimately recover, which is neither relevant to the amount in controversy inquiry nor supportive of Defendants' position that the amount in controversy exceeds $75,000.  Defendants' reliance on the $150,000 amount in the request for exemption is therefore misplaced.

Defendants further argue that because there are ten categories for compensatory and consequential damages, at least some Plaintiffs seek damages in excess of $6,000.  In support of this point, Defendants rely solely on a case cited by Plaintiffs where $6,400 in compensatory damages were awarded for the destruction of a dog.  This falls well-short of the Lowdermilk requirement that the defendants must offer "concrete evidence" to establish the amount in controversy.  See Lowdermilk, 479 F.3d at 1001.  Again,

17

Defendants ask the Court to consider figures based on *recovery*, which is not the standard for assessing the amount in controversy.  Moreover, the case cited by Plaintiffs has no bearing on the amount in controversy here.  Even if it did, there are undoubtedly countless other cases where the compensatory damages awarded would vary.[9]  Because Defendants' allegations are poorly supported, if at all, the Court is unable to determine the general/special damages in controversy.  Accordingly, the Court finds that Defendants have not proved with legal certainty the amount of special or general damages in controversy.

b.  <u>punitive damages</u>

Plaintiffs noted in the request to exempt that if they "were permitted to pray for a specific amount of punitive damages, [they] would seek over $500,000." Ex. C to Opp'n at ¶ 34.  Defendants construe this statement as an admission by Plaintiffs that they seek

---

[9]  In fact, Plaintiffs also cited a case where only $2,000 was awarded for compensatory damages.

18

more than $500,000 in punitive damages.  Defendants

divide this number by the eight Plaintiffs named in the

original complaint to arrive at a figure of $62,500 in

punitive damages per Plaintiff.  Plaintiffs contend

that the damages must be divided by the number of

plaintiffs named at the time of removal, which was ten.

The Court agrees.

     "[J]urisdiction must be analyzed on the basis

of the pleadings filed at the time of removal without

reference to subsequent amendments."  Sparta Surgical

Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159 F.3d

1209, 1213 (9th Cir. 1998); Spencer v. U.S. D. for the

N.D. of Cal., 393 F.3d 867, 871 (9th Cir. 2004)

("Challenges to removal jurisdiction require an inquiry

into the circumstances at the time the notice of

removal is filed.").  At the time MFH and MF filed

their Notice of Removal, Plaintiffs had filed a First

Amended Complaint, which included all ten of them.  The

damages must accordingly be divided by ten people.

While the Court agrees with Defendants' rationale that

19

an increase in the number of plaintiffs would naturally
increase the collective punitive damages claim, the
Court finds that Defendants have not established with
legal certainty the additional damages above and beyond
$500,000.   Defendants' unsupported allegations leave
the Court to speculate about the punitive damages total
for each Plaintiff.   Furthermore, it is of note that
Plaintiffs did not amend their request to exempt after
they filed the First Amended Complaint.   Defendants
consider illogical Plaintiffs' argument that even
though the number of Plaintiffs increased from eight to
ten, the damages total has remained the same.   However,
it would not be in Plaintiffs' interest to claim less
damages than are actually in controversy.   Nor are
Plaintiffs "obligated to overstate their damages to
satisfy [Defendants'] interest in a federal forum."
Lowdermilk, 479 F.3d at 1003.   Given that the only
amount that has been established with any certainty is
$500,000, the Court so bases its calculations.   Five-
hundred thousand dollars divided by ten Plaintiffs

20

totals $50,000 in punitive damages per Plaintiff, well
below the jurisdictional minimum.

c.  attorneys' fees

In the First Amended Complaint, Plaintiffs pray
for attorneys' fees pursuant to Hawaii Revised Statutes
Chapter 480, or as otherwise permitted by law.
"[W]here an underlying statute authorizes an award of
attorneys' fees, either with mandatory or discretionary
language, such fees may be included in the amount in
controversy."  Lowdermilk, 479 F.3d at 1000 (quoting
Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155-56
(9th Cir. 1998)) (quotations omitted).  Hawaii Revised
Statutes § 480-13(b) provides that "if the judgment is
for the plaintiff, the plaintiff shall be awarded . . .
reasonable attorney's fees together with the costs of
suit."  Haw. Rev. Stat. § 480-13(b)(1); see also id. §
480-13(b)(2).  Defendants estimate that a reasonable
hourly rate for Emily Gardner, Plaintiffs' counsel, is
$135.  They also expect that she would expend 50 to 100
hours per Plaintiff over the course of litigation, for

21

a total of $6,750 to $13,500 per Plaintiff.  Notice of
Removal at 8-9.  Although Plaintiffs note that the
range of 50 to 100 hours is a wide margin, they apply
Defendants' figures to demonstrate that even attorneys'
fees totaling $13,500, when added to the $50,000 in
damages per Plaintiff, would not satisfy the over
$75,000 required for jurisdiction.

Defendants cite orders from this district to
arrive at the $135 hourly rate.  This rate appears to
be reasonable.  However, the number of hours that Ms.
Garner will likely expend on this case is far less
certain.  Defendants' estimation that the hours will
range from 50 to 100 is inadequate and does not assist
the Court in determining with certainty the amount of
attorneys' fees at stake.  The top end of the range is
double the low end.  Other than their bare assertion,
Defendants have failed to provide any concrete evidence
to establish the number of hours that Ms. Garner will
expend per Plaintiff.  The Court is thus left to
speculate about the amount of attorneys' fees and

cannot determine with certainty the amount in
controversy.  Even if the Court were to accept the
$13,500 proposed by Defendants, the jurisdictional
amount would still not exceed $75,000.

     For these reasons, the Court finds that
Defendants have not proved, with legal certainty, that
the amount in controversy for any of the ten named
Plaintiffs exceeds $75,000.  Consequently, the Court is
without jurisdiction and recommends that the district
court remand the case to the First Circuit Court.

     B.   <u>Stay</u>

     Given that the Court is recommending remand,
the Motion to Stay is mooted and is HEREBY DENIED.

<u>CONCLUSION</u>

     Based on the foregoing, the Court FINDS that
Defendants have not proved with legal certainty that
the amount in controversy respecting any Plaintiff
exceeds $75,000.  Accordingly, the Court RECOMMENDS
that the district court remand the case to the First
Circuit Court.  The Court additionally DENIES as moot

Defendants' Motion to Stay.

IT IS SO FOUND AND RECOMMENDED AND SO ORDERED.

DATED: Honolulu, Hawaii, October 30, 2007



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 07-00409 ACK/KSC; SYLVESTER, ET AL. V. MENU FOODS, INC., ET AL.; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION TO REMAND AND ORDER DENYING AS MOOT DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS